Harrison **WELLFORD**

v.

**Clifford L. HARDIN, ind. and as Secretary of Agriculture, Roy W. Lennartson, ind. and as Administrator, et al.**

Civ. A. No. 21551.

United States District Court,
D. Maryland.

June 26, 1970.

James J. Hanks, Jr., Baltimore, Md., for plaintiff.

George Beall, U. S. Atty., Fred Motz, Asst. U. S. Atty., Baltimore, Md., and Jeffrey F. Axelrad, Atty., Dept. of Justice, Washington, D. C., for defendants.

NORTHROP, District Judge.

This case involves the implementation of the Freedom of Information Act, 5 U.S.C. § 552, 81 Stat. 54. The plaintiff, desiring certain information and documents from the Department of Agriculture, seeks to have this court com-

pel the Secretary of Agriculture to produce those items which he has heretofore refused to supply. The requested relief related to (1) letters of warning sent by the Compliance and Evaluation staff of the Consumer Marketing Service to non-federally inspected meat or poultry processors suspected by the staff of engaging in interstate commerce, (2) information with respect to detentions of meat and poultry products, (3) the biweekly reports of the Director, Slaughter Inspection Division, to the Administrator of the Consumer and Marketing Service, (4) and the minutes of meetings of the National Food Inspection Advisory Committee. In his complaint, the plaintiff further requested the results of chemical analyses of cooked sausage products, but since the defendant has granted this request, this issue is no longer in this case.

Both sides have moved for summary judgment, and the defendant has also moved to dismiss. As will be more fully set out below, this court finds that there are no material issues of fact as to two of the plaintiff's claims, and therefore this case is ripe for decision as to them. As to the two remaining claims, this court will require further proceedings.

The controlling statute in this case, 5 U.S.C. § 552, reads in pertinent part:

(a)

(3) * * * [E]ach agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action. * *

(b) This section does not apply to matters that are—

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.

* * * * * *

(7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency.

### I. Letters of Warning and Detention Actions

The defendant objects to the production of these items on two grounds. He says first that these items are not "identifiable records" within the meaning of 5 U.S.C. § 552, and secondly that they are part of investigatory files compiled for law-enforcement purposes.

■ The argument that the requested information does not constitute "identifiable records" can be disposed of in short measure. The government in its memorandum relies on two cases, a memorandum of the Attorney General, and the affidavit of Roy W. Lennartson, Administrator of the Consumer and Marketing Service. Under close scrutiny, none of these authorities supports the defendant's position.

The defendant's reliance on Tuchinsky v. Selective Service, 418 F.2d 155 (7th Cir. 1969), is misplaced. In affirming a district court's denial of access to personnel data about local draft board officials, the court's only reference to the identifiable records argument was as follows:

We point out that the district court might well have denied relief under Section 552 on the basis of affidavits which state that the Selective Service System kept no "identifiable records" of personnel data about board personnel. In our computerized society this is somewhat difficult to understand. Nevertheless, there is

no denial that these records are not "identifiable" and consequently the attorney established no right under the statutory language of Section 552.

This statement by the Circuit Court of Appeals relates only to the failure of the plaintiff's affidavit to controvert the defendant's statement that these were not identifiable records. It is based on procedural grounds, and does not relate at all to the substantive claim that these records are not identifiable. In fact, the court intimates that such a claim is "somewhat difficult to understand." Furthermore, the district court's decision was not grounded on the identifiable records issue, and therefore any reference to the identifiability issue is merely dictum.

Also, in support of its position, the government cites Bristol-Myers Co. v. FTC, 284 F.Supp. 745 (D.D.C.1968). Whatever force this opinion might have had with this court is vitiated by the reversal of the United States Circuit Court of Appeals for the District of Columbia in Bristol-Myers Co. v. FTC, 424 F.2d 935 (D.C.Cir. 1970). In that very well reasoned and persuasive opinion, the court reviewed the legislative history of Section 552, and stated that "[t]he legislative history establishes that the primary purpose of the Freedom of Information Act was to increase the citizen's access to government records." The court then went on to say:

> The statutory requirement that a request for disclosure specify "identifiable records" calls for "a reasonable description enabling the Government employee to locate the requested records," but it is "not to be used as a method of withholding records." The FTC can hardly claim that it was unable to ascertain which documents were sought by Bristol-Myers.

It is clear from the affidavits in this case that the records sought are indeed identifiable. Mr. Lennartson, the Director of the Consumer and Marketing Service, stated:

> No identifiable record contains information on detentions sought by plaintiff but instead such information is dispersed in many individual files, some of which are in storage. Assembling this information would require the search of many files and be extremely burdensome.

This statement leaves no doubt that the defendant knows what information is being sought. This is all that the identifiability requirement contemplates. The fact that to find the material would be a difficult or time-consuming task is of no importance in making this determination; an agency may make such charges for this work as permitted by the statute. To deny a citizen that access to agency records which Congress has specifically granted, because it would be difficult to find the records, would subvert Congressional intent to say the least. Therefore, this court finds the defendant's assertion that this requested information is not an "identifiable record" within the meaning of the statute to be totally without merit.

■■ The defendant's second objection to the production of this material is that, pursuant to 5 U.S.C. § 552(b) (7), the information sought is part of investigatory files compiled for law-enforcement purposes. While there is not an abundance of clear authority on this point, this court is of the opinion that the defendant's blanket refusal to disclose and permit inspection and copying of the requested material is unjustified.

The purpose of the exception to the Act for investigatory files compiled for law-enforcement purposes is stated in the report of the House Government Operations Committee:

> This exemption covers investigatory files related to enforcement of all kinds of laws, labor and securities laws as well as criminal laws. This would include files prepared in connection with related Government litigation and adjudicative proceedings. [*The act*] *is not intended to give a private party indirectly any earlier*

*or greater access to investigatory files than he would have directly in such litigation or proceedings.* [Emphasis supplied.]

House Report No. 1497, 2 U.S.Code Cong. & Admin.News 2418 (89th Cong., 2d Sess. 1966).

The defendants urge this court to accept the interpretation of this section by the United States District Court for the District of Puerto Rico in Barceloneta. Shoe Corp. v. Compton, 271 F.Supp. 591 (D.P.R.1967). The facts of that case, however, are distinguishable, and properly dictate the result reached by that court. The National Labor Relations Board refused to make records available to an employer against whom an unfair labor practice charge was pending. The records requested were statements made by witnesses to Board investigators in the course of their investigation of an unfair labor practice charge. The court held that the investigatory file exception applied to that situation, and that the plaintiffs would only be entitled to examine the statements of witnesses who had testified on direct examination. It is very important to note, however, that the ruling in that case dealt with a request for records from a party to an adjudicative proceeding in progress.

In the case before this court, the defendant has refused to produce material relating to numerous letters of warning and detention actions. It is clear that this is not a situation, as envisioned by the House Report, where a party to an enforcement action is seeking to obtain investigatory material prematurely; in fact, the parties directly affected by the material sought in this action are fully aware of the contents. In Bristol-Myers v. FTC, *supra,* the investigatory-files exception was characterized as "intended to limit persons charged with violations of the federal regulatory statutes to the discovery available to persons charged with vio-

lations of federal criminal law." 424 F.2d at 939. With this policy in mind, it is clear that the specific material sought in this action is not within the exception for investigatory files compiled for law-enforcement purposes. Disclosure of material already in the hands of potential parties to law enforcement proceedings can in no way be said to interfere with the agency's legitimate law-enforcement functions. This conclusion is based on this court's reading of the legislative history surrounding this exception, which reveals that its purpose was to prevent premature discovery by a defendant in an enforcement proceeding. Whatever valid policy reasons there may be for extending this exception to other situations cannot serve to alter this court's result. Such a judgment must be made by Congress.

II. Bi-Weekly Reports and National Food Inspection Advisory Committee minutes.

■ The requests of the plaintiff for relief from the refusal of the Secretary to produce bi-weekly reports of the Director, Slaughter Inspection Division to the Administrator, Consumer and Marketing Service, and the minutes of the meetings of the National Food Inspection Advisory Committee, cannot be disposed of at this time. The defendant maintains that the material sought falls within 5 U.S.C. § 552(b) (5) which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."

In addressing itself to a similar contention, the Circuit Court of Appeals for the District of Columbia in Bristol-Myers v. FTC, *supra,* held that the district court, in order to make a meaningful assessment of the propriety of such a claim, should "evaluate the content and status of those documents which the Commission would protect as internal memoranda." The court enun-

ciated a general framework within which a district court could make this determination:

> The statute exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b) (5). This provision encourages the free exchange of ideas among government policy makers, but it does not authorize an agency to throw a protective blanket over all information by casting it in the form of an internal memorandum. Purely factual reports and scientific studies cannot be cloaked in secrecy by an exemption designed to protect only "those internal working papers in which opinions are expressed and policies formulated and recommended." Furthermore, an internal memorandum may lose its protected status when it is publicly cited by an agency as the sole basis for agency action.

Accordingly, before reaching any conclusions as to this requested material, this court will examine the documents in question *in camera*, and will make its determination based on such an examination within the framework given above.

Therefore, it is this 26th day of June, 1970, ORDERED:

1. That the defendant produce the requested letters of warning and information with respect to detention actions of meat and poultry products, and that the defendant be and hereby is enjoined from withholding the same in the future from the plaintiff; and

2. That the defendant submit within forty-five days for *in camera* inspection by this court, copies of the bi-weekly reports of the Director, Slaughter Inspection Division, to the Administrator of the Consumer and Marketing Service, and the minutes of the meetings of the National Food Inspection Advisory Committee, from January 1, 1970, to date.