CITIZENS FOR BETTER CARE v DEPARTMENT OF PUBLIC
HEALTH

1. ADMINISTRATIVE LAW—STATUTES—ADMINISTRATIVE PROCEDURES
   ACT—DISCLOSURE—PUBLIC HEALTH DEPARTMENT—NURSING
   HOMES—STANDING.

   An organization of citizens is a "person" within the meaning of
   the Administrative Procedures Act and had standing to sue for
   disclosure of field reports, facility evaluation reports, and lists
   of personnel pertaining to state-licensed nursing homes com-
   piled by the Department of Public Health since the act provides
   for such relief "on petition of any person" (MCLA 24.205[4],
   24.223[2]).

2. ADMINISTRATIVE LAW—STATUTES—ADMINISTRATIVE PROCEDURES
   ACT—DISCLOSURE—PUBLIC HEALTH DEPARTMENT—NURSING
   HOMES—IDENTIFIABLE MATERIALS.

   Field reports, facility evaluation reports, and personnel lists
   pertaining to state-licensed nursing homes compiled by the
   Department of Public Health were "identifiable materials"
   within the meaning of the compulsory disclosure provisions of
   the Administrative Procedures Act where a plaintiff seeking
   disclosure made clear in its complaint the documents sought,
   and where it seemed obvious that the defendant Department of
   Public Health knew what the plaintiff was after and that the
   trial court was able to distinguish between identifiable and
   nonidentifiable materials (MCLA 24.223[2]).

3. ADMINISTRATIVE LAW—PUBLIC HEALTH DEPARTMENT—NURSING
   HOMES—DISCLOSURE—EXCEPTIONS—ADMINISTRATIVE PROCE-
   DURES ACT.

   There can be no meritorious claim by the Department of Public
   Health that by refusing to disclose field reports, facility evalua-
   tion reports, and personnel lists pertaining to state-licensed
   nursing homes the agency is either protecting the integrity of
   its policy-making process or seeking to prevent the premature
   discovery, by the nursing homes, of information gathered for

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 2 Am Jur 2d, Administrative Law §§ 230, 575.

enforcement purposes where the very information which the agency seeks to shield from the public view is in the possession of those persons regulated since both the field and facility evaluation reports are sent by the agency to the regulated nursing homes shortly after such reports are completed (MCLA 24.222[1] [b], 24.222[1] [e]).

4. ADMINISTRATIVE LAW—PUBLIC HEALTH DEPARTMENT—NURSING HOMES—DISCLOSURE—ADMINISTRATIVE PROCEDURES ACT—INVASION OF PRIVACY.

Field reports and facility evaluation reports pertaining to state-licensed nursing homes compiled by the Department of Public Health may be disclosed to public view without invading the privacy of patients by simply deleting from the reports, prior to disclosure, any information indicating the identity of specific patients, thereby avoiding a conflict with the provision of the Administrative Procedures Act which exempts from disclosure information which would constitute an unwarranted invasion of privacy (MCLA 24.222[1] [f]).

Appeal from Ingham, Ray C. Hotchkiss, J. Submitted Division 2 October 5, 1973, at Lansing. (Docket No. 13701.) Decided March 1, 1974. Leave to appeal denied, 392 Mich —.

Complaint by Citizens For Better Care against the Michigan Department of Public Health, Dr. Maurice S. Reizen, Director, and others to enjoin defendants from withholding information regarding nursing homes. Injunction granted. Defendants appeal. Affirmed.

*Gabe Kaimowitz* and *Alan W. Houseman,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone,* Assistant Attorney General, for defendants.

Before: McGREGOR, P. J., and BRONSON and CARLAND,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

McGREGOR, P. J. This suit was brought pursuant to the Administrative Procedures Act of 1969, MCLA 24.201 *et seq;* MSA 3.560(101) *et seq,* to enjoin defendants from continuing to withhold from plaintiff information regarding nursing homes licensed by the Michigan Department of Public Health. A show-cause hearing was held on July 15, 1971, and continued on December 15 and 16 of that year. In an opinion and order dated February 23, 1972, the trial court enjoined the defendants from refusing to produce for inspection and copying certain identifiable materials. From that order defendants appeal as of right.

The documents sought by plaintiff are compiled or used by the defendant Michigan Department of Public Health in the course of its investigations relative to the licensing of nursing homes in this state. Included in plaintiff's demand were fire marshal reports, field reports, facility evaluation reports, correspondence, complaints, and personnel lists concerning the nursing homes.

Doctor Ziel, Chief of the Bureau of Health Facilities in the Department of Public Health (hereinafter referred to as the Department), testified that members of his staff inspect various health facilities, including nursing homes, to determine whether or not they are complying with the applicable rules and codes regarding sanitation, diets, and general care of patients. Annual inspections of these facilities are made in conjunction with the renewal of the facilities' licenses; other inspections are made pursuant to complaints and the "follow-up" of earlier investigations. The inspections are also used to determine whether the facilities are in compliance with various Federal regulations regarding the Medicare and Medicaid programs.

After each inspection, two particular reports are

prepared: the field report and the facility evaluation report. The field report is prepared by the department consultant who inspected the facility and is used "to describe the things he saw at the time of a facility visit". The report "paints a picture of the facility" and is used to "make recommendations", give advice to the facility concerning problems, "and to identify problems and also to identify violations". The facility evaluation report consists of a list of violations which were discovered during the inspection and noted in the field report and is forwarded to the particular facility. Both reports are sent to various personnel in the Department and play a substantial role in the ultimate decision of whether or not to renew the facility's license. That decision is made by Dr. Reizen, Director of the Department. Copies of the reports are also sent to the Secretary of Health, Education, and Welfare, pursuant to the state's administration of the Medicaid program. The reports, according to Dr. Ziel, are not considered "administrative determinations" but are rather a listing of various findings and recommendations which are used in making administrative decisions. While these reports are not generally available to the public, documents such as a facility's application for license of certification, a copy of that license, and listings of the number of facilities in the state and the number of beds in each, are available.

When a particular facility has been denied a license, or its license has been revoked, it may appeal to the Department and request an administrative hearing. These public hearings give the facilities an opportunity to challenge the reports and their representatives may present evidence and cross-examine witnesses (normally the Depart-

ment personnel who prepared the unfavorable report). While any "aggrieved by the decisions of the Public Health Department can appeal", administrative hearings are nearly always initiated by facilities that have been denied their licenses. In fact, Dr. Ziel testified that, since his association with the Department, beginning in 1966, he has no recollection of any person other than a particular facility appealing a decision of the Department.

Referring to plaintiff's exhibit 1 (a field report which mentioned that the investigator had observed cockroaches in a patient's room), Dr. Ziel testified that he had no objection to making this type of information public, "when it becomes a matter of public record". However, such information does not become part of a "public record", according to Dr. Ziel, until it becomes a part of the administrative hearing file, which, of course, is only after a nursing home has appealed the denial of its license. The release of such information would supposedly lead to various problems for the Department. Dr. Ziel said that the reports are "one person's opinion" and are only investigatory materials, rather than final reports.

Dr. Reizen, Director of the Department, testified that the licensing of nursing homes was one of the programs which his Department administered. He noted that the Department's policy regarding the nondisclosure of the various records was based on the following considerations:

First, he referred to various Federal and state statutory requirements regarding the confidentiality of these records. The Department certifies nursing homes for both the Medicare and Medicaid programs which require that certain information not be disclosed.

Second, Dr. Reizen expressed his concern about

the patients, and expressed his conviction that the patients' privacy should be respected.

Third, the premature disclosure of the requested information would have an adverse effect upon the investigatory personnel in the Department. Dr. Reizen indicated that it was necessary that the Department guard against possible litigation against the inspectors and expressed his belief that his staff would limit their comments in the field report if disclosure rather than nondisclosure were the rule.

Fourth, Dr. Reizen expressed his belief that disclosure of the information contained in the reports would somehow deny the various nursing homes and their operators due process protections.

Fifth, the Department gathers a portion of this information through the use of informants, and disclosure of their identity would hamper their effectiveness.

Finally, in Dr. Reizen's opinion, disclosure of the information contained in the reports prior to an administrative hearing would be a "monumental task".

Dr. Reizen did concede, as did Dr. Ziel, that only nursing homes file requests for administrative hearings, and he could not recall any other person requesting such a hearing. In addition, he agreed that the simplest way to avoid the problem of disclosing the identity of informants was to omit their names from the final report.

A Social Security Administration Staff Officer, in charge of the certification of facilities which receive Federal funds, testified that certain Federal regulations prohibit the state from disclosing information which it may gather in the course of the certification investigation. Thus, all information received pursuant to the state's investigation re-

garding the facilities which receive Medicare funds are protected from disclosure. These regulations do not apply to facilities receiving only Medicaid funds.

The Deputy Health Commissioner of the City of Detroit's Health Department testified that his department had conducted the licensing investigation of nursing homes within the City of Detroit. His department uses the same field and facility evaluation report forms as are employed by the State Department of Public Health. He noted that the citizens of Detroit enjoyed a period of time during which the reports were made available to the public, but that, pursuant to an order drafted by Dr. Reizen in March, 1971, the practice of disclosing such information had been abandoned. He expressed the opinion that disclosure of such information would be beneficial, in that the public could make free and informed judgments regarding various nursing homes. He also pointed out that a particular patient's name was not revealed in the field report, and that the confidentiality and privacy of the patient would thus be honored. He also opined that public pressure, pursuant to the disclosure of the information, would force various nursing homes to adhere to the rules and standards which are now often disregarded.

The president of the plaintiff group testified that his organization received complaints regarding nursing homes from patients, relatives, and other interested persons. He stated that people quite often want information regarding the quality of care offered at a particular home, but that, pursuant to the present policies of the Department, his organization is limited in its response to such requests to describing the number of beds available in the facility and whether or not it is licensed.

Referring to the period of time during which such reports were available in Detroit, he noted that his organization was better able to provide the necessary information when requested to do so.

The trial court ordered the production of the field reports, facility evaluation reports, and lists of personnel and their duties, and noted that the Michigan provisions regarding the disclosure of information, MCLA 24.223(2); MSA 3.560(123)(2), were quite similar to the Federal Freedom of Information Act, 5 USCA 552(a)(3). Noting that the purpose of the Federal act was to increase public access to governmental information, the court referred to a Federal decision in which it was pointed out that items of information already in the hands of a regulated industry do not need to be shielded to protect the government in its regulatory and enforcement functions. The court pointed out that the field and facility evaluation reports were in the hands of the nursing homes and, therefore, there was no need to keep them from the eyes of the public. However, the court did deny plaintiff's request for various items of correspondence for the reason that plaintiff failed to identify sufficiently what items were desired.

On appeal, defendants have raised three issues. For purposes of clarity we have rephrased and consolidated them.

The first question for our consideration is whether or not the plaintiff corporation has the standing to invoke the disclosure provisions of the Administrative Procedures Act.

Section 23(2) of the Administrative Procedures Act of 1969, MCLA 24.223(2); MSA 3.560(123)(2), provides:

"The circuit court for the county in which the agency records are situated may order, *on petition of any*

*person,* the production of any identifiable material improperly withheld from public inspection and copying." (Emphasis added.)

Defendants' primary argument that plaintiff lacks standing to sue for disclosure is worded as follows:

"CBC does not appear to be a 'person' within the meaning of Administrative Procedures Act, Section 23, *supra.* A 'person' is defined by APA, Section 5(4), being MCLA 24.205(4); MSA 3.560(105)(4), as a person or entity other than the agency 'engaged in the particular processing of a rule, declaratory ruling or contested case.' CBC does not show itself to be engaged in any rule processing, declaratory ruling or contested case in seeking information by these proceedings. Therefore, it should not be considered to have the capacity of a party within the meaning of the statute."

Defendants' argument regarding plaintiff's alleged lack of standing is rendered absurd by a simple reading of the statute's actual definition of "person". Section 5(4) of the act, MCLA 24.205(4); MSA 3.560(105)(4), provides:

" 'Person' means an individual, partnership, association, corporation, governmental subdivision or public or private organization of any kind *other than the agency engaged in the particular processing of a rule, declaratory ruling or contested case."* (Emphasis added.)

Contrary to defendants' assertion, the definition quoted above makes obvious the fact that plaintiff is a "person" within the meaning of the act. There is no requirement that the individual, partnership association, etc. be engaged in the processing of a rule, declaratory ruling, or contested case. Rather, the latter phrase refers to the agency, which is not a "person" for purposes of the act.

Since plaintiff is a "person" within the meaning

of § 5(4), MCLA 24.205(4); MSA 3.560(105)(4), it has standing to sue for disclosure under § 23(2), MCLA 24.223(2); MSA 3.560(123)(2), which provides for such relief "on petition of any person".

Defendants next contend that the trial court erred in ruling that field reports, facility evaluation reports, and lists of personnel pertaining to state-licensed nursing homes were subject to compulsory disclosure under the Michigan Administrative Procedures Act of 1969.

This issue is one of both broad significance and first impression in this state. Fortunately, the absence of Michigan case law interpreting the pertinent provisions of the recently enacted Administrative Procedures Act of 1969 does not, as would be expected, deprive this Court of precedential guidance. For, as the trial court correctly noted, the APA provisions in question are, in both substance and form, strikingly similar to the Federal Freedom of Information Act, 5 USCA 552. Thus, Federal decisions interpreting the latter, though of course not binding on this Court, provide some guidance in our attempt properly to construe the former.

Section 21 of the Administrative Procedures Act[1] provides, in pertinent part, that:

"(1) An agency shall publish and make available for public inspection and copying * * *

"(a) Final orders or decisions in contested cases and the records on which they were made.

"(b) Promulgated rules.

"(c) Other written statements which implement or interpret law, rules or policy, including but not limited to guidelines, manuals and forms with instructions, adopted or used by the agency in the discharge of its functions."

---

[1] MCLA 24.221; MSA 3.560(121).

Section 22 of the act[2] exempts certain materials from the compulsory disclosure requirements of § 21, specifically:

"(a) Material exempted from disclosure by statute.

"(b) Interagency or intra-agency letters, memoranda or statements which would not be available by law to a party other than an agency in litigation with the agency and which, if disclosed, would impede the agency in the discharge of its functions.

"(c) Material obtained in confidence from a person, matter privileged by law and trade secrets.

"(d) Financial and commercial information relating to a specific regulated person prepared by or for the use of an agency responsible for the regulation or supervision of the person.

"(e) Investigatory materials compiled or used for regulatory or law enforcement purposes except to the extent available by law to a party to a contested case.

"(f) Material the disclosure of which would constitute an unwarranted invasion of privacy."

The Federal Freedom of Information Act, 5 USCA 552, which became effective on July 4, 1967, and obviously served as a legislative model in the drafting of the foregoing sections of the Administrative Procedures Act of 1969, provides in part:

"(a) * * * (3) * * * each agency, on request for identifiable records made in accordance with published rules stating the time, place, fees to the extent authorized by statute, and procedure to be followed, shall make the records promptly available to any person. On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant * * *

---

[2] MCLA 24.222; MSA 3.560(122).

"(b) This section does not apply to matters that are—

"(1) specifically required by Executive order to be kept secret in the interest of the national defense or foreign policy;

"(2) related solely to the internal personnel rules and practices of an agency;

"(3) specifically exempted from disclosure by statute;

"(4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

"(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

"(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

"(7) investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency;

"(8) contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

"(9) geological and geophysical information and data, including maps, concerning wells."

The trial court in the instant case, having noted this similarity between the Federal and Michigan acts, relied principally on the decision in *Wellford v Hardin,* 315 F Supp 175 (D Md, 1970), *aff'd* 444 F2d 21; 17 ALR Fed 514 (CA 4, 1971), in granting plaintiff access to the field reports, facility evaluation reports, and personnel lists.

In *Wellford,* the plaintiff sought from the defendant Department of Agriculture copies of warning letters sent to nonfederally-inspected meat and poultry processors suspected of being engaged in interstate commerce and information with respect to the administrative detention of possibly adulterated or misbranded meat or poultry products. The

defendant argued that the materials sought were not "identifiable records" within the meaning of § 552(a)(3) of the Freedom of Information Act and that, even if they were, they were part of "investigatory files compiled for law enforcement purposes" and hence exempt from compulsory disclosure by virtue of § 552(b)(7) of the act. The trial and appellate courts rejected both arguments and ordered the production of the materials.

In this Court, the defendants contend, as they did in the trial court, that the field reports, facility evaluation reports, and personnel lists are not "identifiable materials" for purposes of section 23 of the Administrative Procedures Act.[3] Like the trial court, we find the *Wellford* court's discussion of the meaning of "identifiable records", as that term is used in 5 USCA § 552(a)(3), instructive.

Addressing this question of identifiability, the district court in *Wellford* referred to the case of *Bristol-Myers Co v FTC,* 138 US App DC 22, 25; 424 F2d 935, 938 (1970), wherein the Court noted:

"The statutory requirement that a request for disclosure specify 'identifiable records' calls for 'a reasonable description enabling the Government employee to locate the requested records,' but it is 'not to be used as a method of withholding records.' "

The Court in *Wellford* referred to a statement made by an employee of the defendant and said that this statement left "no doubt that the defendant [knew] what information [was] being sought". The Court continued, stating "[t]his is all that the identifiability requirement contemplated". 315 F Supp at 177.

---

[3] MCLA 24.223; MSA 3.560(123) which provides, in part: "(2) The circuit court * * * may order * * * the production of any *identifiable material* improperly withheld from public inspection and copying." (Emphasis added.)

In the instant case, the defendants were questioned extensively about the field and facility evaluation reports. The plaintiff, in its complaint, made clear that it desired access to the field reports, facility evaluation reports, and personnel lists. The plaintiff also sought certain items of correspondence and complaints concerning the nursing homes, but the trial court denied this request for disclosure because of a lack of specificity. It seems obvious that the defendants knew what the plaintiff was after and that the trial court was able to distinguish between identifiable and nonidentifiable materials. Under these circumstances, we hold that the trial court did not err in determining that the field reports, facility evaluation reports, and personnel lists were "identifiable materials" within the meaning of § 23 of the act.

Defendants' remaining objections to the trial court's order have not been stated with any particularity or in terms of specific statutory disclosure exemptions. However, in light of the vital importance of the present issue both to the public and to the administrative agencies of this state, we will discuss the possible applicability of the relevant exemptions from compulsory disclosure listed in § 22 of the Administrative Procedures Act. Again, we will employ Federal decisions interpreting the Freedom of Information Act as our touchstone when necessary.

First, defendants refer to various Federal administrative regulations dealing with the disclosure of information obtained by state agencies in the course of investigations or inspections of facilities receiving Medicare or Medicaid funds. In referring to these regulations, it appears that defendants are, in effect, contending that those materials subject to the regulations are exempt from compul-

sory disclosure under §§ 21 and 23 of the APA by virtue of § 22(1)(a), as "[m]aterial exempted from disclosure by statute".

Initially, it should be noted that the regulations in question apply only to facilities receiving Medicare funds. No similar disclosure regulations exist in reference to the Medicaid program.

On appeal, plaintiff concedes that the disclosure of reports and other information concerning those facilities seeking or obtaining Medicare certification is governed by the Federal regulations. Thus, we need not now decide the extent to which Federal regulations governing disclosure of information gathered by Michigan administrative agencies take precedence over the disclosure requirements of the Administrative Procedures Act. Suffice it to say that defendants have failed to indicate to what, if any, extent the trial court's order conflicts with Federal disclosure regulations. Absent such a showing and in light of plaintiff's concession, we refrain from disturbing that order.

Second, it will be recalled that, during trial, representatives of the Department indicated concern that the disclosure of the field and facility evaluation reports would have an adverse effect on inter- and intra-agency communications and the effective functioning of the Department.

In light of this and similar testimony adduced at trial, it could understandably be maintained that either of two related exceptions contained in § 22 of the Administrative Procedures Act bar disclosure of the field and facility evaluation reports, specifically § 22(1)(b) which exempts "[i]nteragency or intra-agency letters, memoranda or statements which would not be available by law to a party other than an agency in litigation with the agency and which, if disclosed, would impede the agency

in the discharge of its functions", and § 22(1)(e), exempting "[i]nvestigatory materials compiled or used for regulatory or law enforcement purposes except to the extent available by law to a party to a contested case".

We elect to discuss these possible exceptions together because, in our view, each is inapplicable for essentially the same reason.

Analogizing from the parallel exceptions found in subsection (b) of the Freedom of Information Act,[4] it is evident that the primary purpose of § 22(1)(b) of the APA is to insure that state administrative agencies are not forced to make policy decisions in the limelight of public attention, *i.e.,* that agency employees and officials can freely and frankly express their views regarding questions of policy without the restraining awareness that the views so expressed are subject to public disclosure.[5] The purpose of § 22(1)(e) is to prevent premature discovery by a defendant in an enforcement proceeding.[6]

The inapplicability of both these exceptions rests on the fact that both the field and facility evaluation reports are sent by the Department to the regulated nursing homes shortly after such reports

---

[4] 5 USCA 552(b)(5) and (7).

[5] 5 USCA 552(b)(5) exempts "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency". Note that the parallel APA exemption, § 22(1)(b), is narrower in that it also requires a showing that disclosure would impede the agency in the discharge of its functions. For a discussion of Federal cases construing the Federal exemption, *see* Anno 7 ALR Fed 855, *What are Interagency or Intraagency Memorandums or Letters Exempt from Disclosure under the Freedom of Information Act.* (5 USCA 552[b][5]).

[6] 5 USCA 552(b)(7) exempts "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency". Federal decisions interpreting this exemption can be found in Anno, 17 ALR Fed 522, *What Constitute Investigatory Files Exempt from Disclosure under Freedom of Information Act.* (5 USCA 552[b][7]).

are completed. Thus, the very information which defendants seek to shield from the public view is in the possession of those persons regulated, on behalf of the public, by the defendants. Under these circumstances, there can be no meritorious claim that the defendant agency is either protecting the integrity of its policy-making process or seeking to prevent the premature discovery, by the nursing homes, of information gathered for enforcement purposes.

Finally, we agree with plaintiff that the privacy of patients can easily be safeguarded by simply deleting from the reports, prior to disclosure, any information indicating the identity of specific patients. This procedure avoids any § 22(1)(f) objection to the trial court's order.

Having carefully considered defendants' objections to the judgment and order of the trial court, we find no error and commend the trial court on his well-written and scholarly opinion.

Affirmed.

All concurred.