INTERNATIONAL BUSINESS MACHINES CORPORATION v
DEPARTMENT OF TREASURY

1. ADMINISTRATIVE LAW—STATE AGENCIES—DISCLOSURE OF INFORMA-
TION—ADMINISTRATIVE PROCEDURES ACT—STATUTES.

State agencies are required by the Administrative Procedures Act
to make certain information available to the public (MCLA
24.221–24.223; MSA 3.560[121]–3.560[123]).

2. ADMINISTRATIVE LAW—FREEDOM OF INFORMATION ACT—ADMINIS-
TRATIVE PROCEDURES ACT—DISCLOSURE—CONSTRUCTION—STAT-
UTES.

The close similarity between the Federal Freedom of Information
Act and Michigan's disclosure provisions in the Administrative
Procedures Act makes constructions of the FOIA by the Fed-
eral courts persuasive in construction of Michigan's disclosure
requirements (MCLA 24.221–24.223; MSA 3.560[121]–
3.560[123]).

3. ADMINISTRATIVE LAW—DISCLOSURE—ADMINISTRATIVE PROCEDURES
ACT—EXEMPTIONS—STATUTES—CONSTRUCTION.

The Court of Appeals must broadly construe the categories of
disclosable information contained in § 21 of the Administrative
Procedures Act in order to implement the legislative policy of
comprehensive disclosure of administrative law; this also re-
quires that exemptions from disclosures contained in § 22 of the
APA must be read restrictively (MCLA 24.221–24.222; MSA
3.560[121]–3.560[122]).

4. ADMINISTRATIVE LAW—DISCLOSURE—ADMINISTRATIVE PROCEDURES
ACT—STATUTES.

Section 21 of the Administrative Procedures Act forbids the
promulgation of secret administrative law, whether by deci-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 2 Am Jur 2d, Administrative Law §§ 201–206.
[2, 4, 5] 66 Am Jur 2d, Records and Recording Laws § 32 *et seq.*
[3] 66 Am Jur 2d, Records and Recording Laws § 34.
[6, 7] 2 Am Jur 2d, Administrative Law § 434 *et seq.*
[8, 9] 36 Am Jur 2d, Records and Recording Laws § 38.
[10] 66 Am Jur 2d, Records and Recording Laws §§ 34, 36.

sions in contested cases, by rule-making procedures, or by any other interpretive written statements (MCLA 24.221; MSA 3.560[121]).

5. ADMINISTRATIVE LAW—DISCLOSURE—ADMINISTRATIVE PROCEDURES ACT—INCOME TAX ACT—REVENUE COMMISSIONER—HEARING OFFICERS' REPORTS—ORDERS OF DETERMINATION—STATUTES.

The reports of a hearing officer under § 421(1) of the Income Tax Act and the decisions and orders of determination issued by the Revenue Commissioner come within the ambit of § 21 of the Administrative Procedures Act which provides for the public disclosure of written statements which implement or interpret law, rules or policy, adopted or used by an agency in the discharge of its functions (MCLA 24.221, 206.421; MSA 3.560[121], 7.557[1421]).

6. ADMINISTRATIVE LAW—DECISIONS OF REVENUE COMMISSIONER—INCOME TAX ACT—DISCLOSURE—ADMINISTRATIVE PROCEDURES ACT —STATUTES.

The Revenue Commissioner's decisions concerning apportionment or allocation of income under § 195 of the Income Tax Act are prima facie disclosable materials under § 21(1)(c) of the Administrative Procedures Act (MCLA 24.221[1][c], 206.195; MSA 3.560[121][1][c], 7.557[1195]).

7. ADMINISTRATIVE LAW—DISCLOSURE—INCOME TAX ACT—ADMINISTRATIVE PROCEDURES ACT—STATUTES.

Proceedings under § 421 of the Income Tax Act do not have to be contested cases in order for such proceedings to be within the ambit of § 21 of the Administrative Procedures Act, since the APA disclosure mandate is not limited to decisions rendered after formal hearing; it is the contents of a written decision, not the procedures at a hearing, which determine whether or not a decision must be released (MCLA 24.221, 206.421; MSA 3.560[121], 7.557[1421]).

8. ADMINISTRATIVE LAW—STATE AGENCIES—DISCLOSURE—ADMINISTRATIVE PROCEDURES ACT—EXEMPTIONS TO DISCLOSURE PROVISIONS—CONFIDENTIAL MATERIAL—STATUTES.

Confidential portions of otherwise disclosable state agency materials whenever possible should be deleted in order to allow the release of the disclosable portions; only that information which cannot be rendered sufficiently anonymous by deletion of a party's name and other identifying information must be excluded from disclosure (MCLA 24.221–24.223; MSA 3.560[121]–3.560[123]).

9. ADMINISTRATIVE LAW—DISCLOSURE—DECISIONS OF REVENUE COMMISSIONER—ORDERS OF DETERMINATION—ADMINISTRATIVE PROCEDURES ACT—INCOME TAX ACT—EXEMPTIONS TO DISCLOSURE PROVISIONS—STATUTES.

Decisions of the Revenue Commissioner under § 195 of the Income Tax Act and orders of determination under § 421 of the Income Tax Act are not exempt from the disclosure provisions of the Administrative Procedures Act as being intra-agency memoranda or statements which are exempt through § 22(1)(b) of the APA since these materials are released to the taxpayer; there can be no meritorious claim that an agency against whom a disclosure order is sought is protecting the integrity of its decision-making process where the very information that the agency seeks to shield is already in the possession of the party regulated (MCLA 24.222[1] [b], 206.195, 206.421; MSA 3.560[122] [1] [b], 7.557[1195], 7.557[1421]).

10. ADMINISTRATIVE LAW—DISCLOSURE—INCOME TAX ACT—HEARING REPORTS—IN CAMERA REVIEW—STATUTES.

Statements in reports of hearing officers, on hearings conducted under § 421 of the Income Tax Act, which relate only indirectly to the disposition of the case discussed in the report may be deleted and the remainder of each report must be disclosed; any reasonable doubt in categorization of a statement should be resolved in favor of disclosure (MCLA 206.421; MSA 7.557[1421]).

Appeal from Ingham, Donald L. Reisig, J. Submitted May 13, 1976, at Lansing. (Docket No. 21966.) Decided October 18, 1976.

Complaint by International Business Machines Corporation against the Revenue Division of the State Department of Treasury seeking recovery of income taxes previously paid. An interlocutory order was entered requiring the Revenue Division to disclose certain information requested by IBM. Defendant appeals by leave granted. Remanded.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *Benjamin O. Schwendener, Jr.* and *Joseph A. Fink),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch* and *Terry P. Gomall,* Assistants Attorney General, for defendant.

Before: J. H. GILLIS, P. J., and M. F. CAVANAGH and McGREGOR,* JJ.

M. F. CAVANAGH, J. Defendant appeals from an interlocutory order of August 27, 1974, requiring immediate publication of income tax records compiled under MCLA 206.195; MSA 7.557(1195) and MCLA 206.421; MSA 7.557(1421). On March 3, 1975, we granted leave to appeal and a motion for stay of the circuit court proceedings.

In 1973, plaintiff International Business Machines Corporation (IBM) filed an action in circuit court to recover income taxes previously paid, alleging discriminatory and arbitrary enforcement of the tax laws by the Revenue Division. As part of discovery in its suit, IBM petitioned the court for an order requiring the Revenue Division to disclose the following information: reports of hearing officers under § 421(1) of the Income Tax Act of 1967, the Revenue Commissioner's Orders of Determination of Tax made after the § 421(1) hearings, and the Revenue Commissioner's written apportionment or allocation determinations made under authority of § 195 of the Income Tax Act.[1] IBM claimed that the disclosure provisions of the

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Section 421 of the Income Tax Act of 1967, MCLA 206.421; MSA 7.557(1421), provides:

"(1) In carrying out the provisions of this act, the department after determining the amount of tax due from any taxpayer shall give notice to the taxpayer of its intent to levy the tax. The taxpayer, if he so desires and serves notice thereof upon the department within 20 days, may demand a hearing on the question of his liability for the assessment. Thereupon, the department shall set a time and place for hearing and shall give the taxpayer reasonable notice thereof.

Administrative Procedures Act of 1969 (APA); MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.,* required the Revenue Division to release the information. After a hearing, the circuit court found that the Revenue Division had violated §§ 21 and 23 of the APA; MCLA 24.221; MSA 3.560(121), and MCLA 24.223; MSA 3.560(123), and ordered it to disclose the requested information after deleting identifying details.[2]

"(2) The taxpayer shall be entitled to appear before the department and be represented by counsel and present testimony and argument. After the hearing the department shall render its decision in writing and by order levy any tax, interest and penalty found by it to be due and payable.

"(3) Any taxpayer aggrieved by any determination of tax liability made by the department may appeal to the state board of tax appeals under the provisions of Act No. 122 of the Public Acts of 1941, as amended, being sections 205.1 to 205.17 of the Compiled Laws of 1948, or after payment of the amount of tax, interest and penalties found to be due by the department, he may bring an action in the circuit court of the county of Ingham to recover the amount paid. The action shall be commenced within 6 months after payment of the tax or after the adverse determination by the department of the validity of the taxpayer's claim for refund, whichever occurs later, and shall be conducted in accordance with the statutes and rules of procedure concerning actions at law not inconsistent with the provisions of this act."

Section 195 of the Income Tax Act of 1967, MCLA 206.195; MSA 7.557(1195), provides:

"If the allocation and apportionment provisions of this act do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the commissioner may require, in respect to all or any part of the taxpayer's business activity, if reasonable:

"(a) Separate accounting;

"(b) The exclusion of any one or more of the factors;

"(c) The inclusion of 1 or more additional factors which will fairly represent the taxpayer's business activity in this state; or

"(d) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's taxable income.

"An alternative method will be effective only with approval by the commissioner."

[2] In the full text of its order of August 27, 1974, the circuit court ordered:

"1. The Department of Treasury, the Revenue Division of the Department of Treasury, the Revenue Commissioner and the Hearing Officers conducting hearings pursuant to Section 421 of the Tax Act

The procedure followed by the Revenue Division under §§ 421 and 195 of the Income Tax Act is detailed in the concise statement of facts submitted under GCR 1963, 806.3(1)(b):

*"Manner in which Defendant Conducts Statutorily Prescribed Section 421 Hearings:* Taxpayers are notified of Defendant's intent to assess income tax by letter and advised of their right to demand a hearing as provided in § 421 of the Income Tax Act. \* \* \* Thereafter, taxpayers are advised by a Hearing Officer of the time and place of hearing and the Defendant's asserted governing rules of procedure \* \* \* . Present at the § 421 hearing are the Hearing Officer; a representative

to immediately publish and make available for public inspection and copying during its, or their, business hours or on subscription on request of Plaintiff herein, or any person, all Orders of Determination signed and issued by the Revenue Commissioner pursuant to Tax Act Section 421; all evidence, findings of fact, authority, or reasoned opinion of the Hearing Officer upon which any Order of Determination of the Revenue Commissioner pursuant to Section 421 of the Tax Act refers to or is based; all the Revenue Commissioner's written apportionment and allocation implementations and/or interpretations, including the Revenue Commissioner's rejection or approval of any alternative method, under Tax Act Section 195; and any other policies, rules, memoranda, guidelines and instructions adopted or used by the agencies in the discharge of their functions in relation to the Tax Act in general, and specifically Tax Act Sections 4(2) and 14(1); and

"2. That the Department of Treasury, the Revenue Division of the Department of Treasury, the Revenue Commissioner and the Hearing Officer(s) shall:

"(a) delete from the material published or made available for public inspection pursuant to Paragraph 1 of this Order, the names of the taxpayers involved so as to protect the privacy of those taxpayers; and

"(b) delete from the material required to be published and made available for public inspection pursuant to Paragraph 1 hereof only those other types of details or information which are unwarranted invasions of the personal privacy of a taxpayer.

"Any deletion of types of details or information by any agency pursuant to subparagraph (b) of Paragraph 2 of this Order shall be subject to immediate review by this Court upon application to this Court by Plaintiff herein.

"3. Either party herein may apply to this Court, at any time, for further instructions as to the application of this Order or for clarification of this Order."

of the Revenue Division, Department of Treasury, the Taxpayer and/or the Taxpayer's attorney or account-ant. [The Revenue Commissioner is ordinarily not in attendance at the hearing.] After the § 421 hearing the Hearing Officer prepares written findings of fact; a summary of evidence; a delineation of applicable legal authority; a reasoned opinion; and, a decisional recom-mendation. No transcript of the § 421 hearings is pre-pared. An Order of Determination is issued by the Revenue Commissioner and is sent to the Taxpayer.[3] * * * While the Order of Determination states that it is based on:

    " ' * * * the evidence and findings of the Hearing Officer * * * supported by authority or reasoned opin-ion * * * ' none of the Hearing Officer's evidence, findings, authority or reasoned opinions (referred to in the Order of Determination and upon which it is based) are ever disclosed to the Taxpayer. The information received by the Taxpayer, as the result of the § 421 hearing, is the Revenue Commissioner's Order of Deter-mination; the Final Assessment and, in some cases, income tax schedules showing adjustments to the intent to assess consistent with the Order of Determination.

---

[3] The Revenue Division has conceded that the following is a typical Order of Determination:

ORDER OF DETERMINATION

"The Department, having reviewed the evidence and findings of the Hearing Officer in the above captioned matter, and being advised in the premises; and,

"IT APPEARING that the same is supported by authority or reasoned opinion and that the recommendation should be accordingly accepted;

"NOW THEREFORE, it is ORDERED and DETERMINED, this 20th day of February, 1973, that the proposed corporate income tax deficiency, covering the periods appearing on the respective notice of Intent to Assess F 38889, shall be assessed as originally determined for tax-due in the amount of $364,239.77 and interest in the amount of $7,786.08, for a total amount due of $372,025.85; and, it is further ORDERED and DETERMINED that taxpayer's Amended Protective Claim for Refund, dated October 3, 1972, is hereby denied.

"It is further ORDERED and DETERMINED that the Department thus enters an assessment against you; a true copy of which is attached; and, that this assessment, including interest, will be subject to 6% interest per annum from the date of intent to assess until payment.

"This assessment is payable immediately."

[s] Revenue Commissioner

"*Variation of the Statutorily Prescribed Apportionment and Allocation Provisions of the Act Under Section 195:* In practice, taxpayers customarily submit written requests, all or most based on actual facts, for rulings for permission to change the statutorily prescribed apportionment and allocation formulas; or, upon audit, the Revenue Division, Department of Treasury proposes a change pursuant to its authority under § 195 of the Act. Taxpayers are advised in writing of approvals or rejections of their requests to change the statutorily prescribed apportionment and allocation provisions under § 195 of the Act. Taxpayers are also advised in writing of decisions by the Revenue Division, Department of Treasury, to invoke § 195.

"*Absence of Published Rulings and Regulations Approved by the Legislature under Sections 45 and 46 of the Administrative Procedures Act:* No Rules or Regulations have ever been submitted for approval by, or approved by, the Legislature as provided in §§ 45 and 46 of the Administrative Procedures Act. Section 471 of the Michigan Income Tax Act provides, in material part, that:

" 'The Department shall * * * promulgate rules in conformity with this act * * * for the computation of the tax, the manner and time of changing or electing accounting methods and of exercising the various options contained in this act, the making of returns and the ascertainment, assessment and collection of the tax imposed hereunder. * * * '

The Treasury Department, Revenue Division has published, what it terms, proposed Rules and Regulations which it uses in administering the Income Tax Act. The proposed Rules and Regulations are public, but have not been submitted to or been approved by the Legislature as provided for in the Administrative Procedures Act."

The APA requires state agencies to make certain information available to the public. Sections 21–23 of the APA; MCLA 24.221–24.223; MSA 3.560(121)–3.560(123), provide:

"Sec. 21. (1) An agency shall publish and make available for public inspection and copying during its business hours or on subscription on request of any person:

"(a) Final orders or decisions in contested cases and the records on which they were made.

"(b) Promulgated rules.

"(c) Other written statements which implement or interpret law, rules or policy, including but not limited to guidelines, manuals and forms with instructions, adopted or used by the agency in the discharge of its functions.

"(2) To the extent required to prevent an unwarranted invasion of personal privacy, an agency may delete identifying details when it publishes or makes available a matter required to be published and made available for public inspection.

"(3) The publications may be in pamphlet, loose-leaf or other appropriate form in printed, mimeographed or other written manner. Except as otherwise provided by law, the agency may charge not more than cost for each copy of the publication.

"Sec. 22. (1) This chapter does not apply to:

"(a) Material exempted from disclosure by statute.

"(b) Interagency or intra-agency letters, memoranda or statements which would not be available by law to a party other than an agency in litigation with the agency and which, if disclosed, would impede the agency in the discharge of its functions.

"(c) Material obtained in confidence from a person, matter privileged by law and trade secrets.

"(d) Financial and commercial information relating to a specific regulated person prepared by or for the use of an agency responsible for the regulation or supervision of the person.

"(e) Investigatory materials compiled or used for regulatory or law enforcement purposes except to the extent available by law to a party to a contested case.

"(f) Material the disclosure of which would constitute an unwarranted invasion of privacy.

"(2) This chapter does not authorize the withholding of information otherwise required by law to be made available to the public or to a party in a contested case.

"Sec. 23. (1) Except to the extent that a person has actual and timely notice of the terms thereof, a person shall not in any manner be required to resort to, or be adversely affected by, a matter required to be published and made available and not so published and made available.

"(2) The circuit court for the county in which the agency records are situated may order, on petition of any person, the production of any identifiable material improperly withheld from public inspection and copying."

The Michigan disclosure provisions are essentially an abbreviated version of the Federal Freedom of Information Act (FOIA), 81 Stat 54 (1967), 5 USCA 552. The close similarity between the Federal and state acts' language makes constructions of the FOIA by the Federal courts persuasive in construction of our own disclosure requirements. *Citizens for Better Care v Department of Public Health,* 51 Mich App 454, 463; 215 NW2d 576 (1974), *lv den,* 392 Mich 758 (1974).

In order to implement the legislative policy of comprehensive disclosure of administrative law as evidenced in these provisions of the APA, we must broadly construe the categories of disclosable information contained in § 21. Michigan lacks any device to provide truly systematic public notice of administrative rulings that would serve the function of the Federal Register. Although § 23(1) of the APA; MCLA 24.223(1); MSA 3.560(123)(1), protects a person from adverse effects of matters otherwise required to be published, the scope of that provision itself depends upon the scope attributed to § 21. As a corollary to the requirement that the disclosure categories be expansively construed, the exemptions from disclosure contained in § 22 of the APA must be read restrictively. In general the process is one of deciding whether the

information sought fits within a disclosure category; such information is prima facie disclosable. The court must then decide whether an exemption contained in § 22 removes the agency's duty to disclose, always keeping in mind the Legislature's decision that disclosure is the preferred outcome.

I

The reports of hearing officers under § 421(1) of the Income Tax Act, the Orders of Determination issued by the Revenue Commissioner, and the Revenue Commissioner's decisions under authority of § 195 are subject to public disclosure as "written statements which implement or interpret law, rules or policy * * * adopted or used by the agency in the discharge of its functions", within § 21(1)(c) of the APA.

A. *The § 421 Hearings and Determinations*

The Michigan APA disclosure provisions focus on public access to administrative law. While the Michigan provisions are not as broad as the FOIA, which in 5 USCA 552(a)(3) extends to "all identifiable records", § 21 of the APA parallels the FOIA provisions that forbid the promulgation of secret administrative law, whether by decisions in contested cases, by rulemaking procedures, or by any other interpretive written statements.[4] The scheme of § 21 reveals that § 21(1)(c) was intended to sweep within the disclosure requirements any written statements upon which the agency relies as indicative of law or policy, whether or not those

---

[4] The Michigan disclosure provisions may actually extend to "any identifiable material improperly withheld from public inspection and copying". Section 23(2) of the APA; MCLA 24.223(2); MSA 3.560(123)(2). That view appears to have been assumed by this Court in *Citizens for Better Care, supra,* and in *Fundunburks v Michigan Mutual Liability Co,* 63 Mich App 405, 409; 234 NW2d 545, 548 (1975).

statements might also fall within parts (a) or (b) as decisions in contested cases or promulgated rules. We agree with the Federal courts that the "fundamental principle is that secret law is an abomination". Davis, Administrative Law Treatise, § 3A.12 (1970 Supp).

Under this standard, the reports of a hearing officer under § 421(1) of the Income Tax Act, including the "delineation of authority, reasoned opinion, and decisional recommendation" are within § 21(1)(c) of the APA. As discussed below, to the extent that certain facts or identifying details are unnecessary to understand the hearing officer's position or constitute an unwarranted invasion of privacy, the circuit court may delete them after *in camera* inspection.

Similarly, the Orders of Determination of Tax issued by the Revenue Commissioner come within the ambit of § 21(1)(c). Although these orders appear to contain few statements of value, they provide the final result of the agency proceeding, indicating the Revenue Commissioner's approval or disapproval of the hearing officer's report. One is of little value without the other; together they comprise the agency's reasoned legal decision.

B. *Section 195 Interpretations*

The Revenue Commissioner's decisions concerning apportionment or allocation of income under § 195 of the Income Tax Act are prima facie disclosable material under § 21(1)(c) of the APA. These often take a form similar to the Federal Internal Revenue Service's letter rulings, although based on actual, rather than "hypothetical" facts. Although as discussed later, an exemption may apply to limit the scope of disclosure, there can be little doubt that these decisions make up part of a secret body of Revenue Division interpretations of

the tax law. Given the paucity of published Treasury Department rules or regulations, we have little choice but to believe that such a body of secret law exists.[5]

Much of the argument of the parties centers on the interpretation of "contested case" within § 21(1)(a) of the APA. While we note that the § 421 hearing officer report and order of determination appear to fall squarely within the definition of a contested case as "a proceeding * * * in which a determination of the legal rights, duties or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing", § 3(3) of the APA; MCLA 24.203(3); MSA 3.560(103)(3), we are reluctant to so hold. The purpose of the § 421 hearing is to provide an informal meeting of the taxpayer and the state; formal agency adjudication is provided by appeal to the Board of Tax Appeals. MCLA 206.421(3); MSA 7.557(1421)(3). To hold that the § 421 hearing is a contested case would require the state to provide all of the protections of a formal hearing which are now furnished by the *de novo* review of the Board of Tax Appeals. Compare Chapter 4 of the APA; MCLA 24.271–24.287; MSA 3.560(171)–3.560(187), with MCLA 205.7; MSA 7.657(7).

Although the hearing requirements of the APA postdate the creation of the § 421 hearings, the Legislature has reiterated its view that these hear-

[5] In the action underlying this case, IBM challenges the Revenue Division's treatment of investment income allocation and apportionment. It is apparent from changes in the instructional forms for corporate taxpayers over the years 1968–1974 that the Revenue Division has changed its interpretation of this part of the tax law, yet the Treasury Department has not sought legislative approval of any interpretive regulations, [as required by MCLA 24.246; MSA 3.560(146)]. Since the Legislature left the statute intact during that period, we must assume that the Revenue Division changed its interpretation of the law, through reasoning as yet undisclosed.

ings should be informal. In § 87(1) of the Single Business Tax Act, 1975 PA 228; MCLA 208.87(1); MSA 7.558(87), the Legislature expressly exempted the procedures of the analogous conference on tax assessment from the requirements of the APA. Although this exemption does not preclude application of "contested case" procedures to § 421 hearings, it appears much less likely that that was the legislative purpose.

Our view of the policy incorporated into the APA does not require that we label the § 421 proceedings a "contested case". The APA disclosure mandate is not limited to decisions rendered after formal hearing. It is the content of the written decision, not the procedures at the hearing, which determines whether or not the decision must be released. The impact of § 21(1)(c) is to make any written decision or statement which interprets or implements law, rules or policy subject to public disclosure.

## II

Upon remand the circuit court must examine *in camera* the materials otherwise subject to disclosure and delete such identifying details as are necessary to prevent an unwarranted invasion of privacy as well as statements of the hearing officer which reflect the Revenue Division's general policy discussions.

A. *Material Exempted from Disclosure by Statute*

The Revenue Division argues that MCLA 206.465; MSA 7.557 (1465) is a statute which precludes the agency from disclosing any of the information, thereby exempting it from disclosure through § 22(1)(a) of the APA; MCLA 24.222(1)(a); MSA 3.560(122)(1)(a). Section 465 of the Income

Tax Act; MCLA 206.465; MSA 7.557(1465), provides:

"(1) Unless in accordance with a judicial order, or as required in the proper administration of this act, or as permitted by Act No. 122 of the Public Acts of 1941, as amended, no member of the department or agent or employee thereof, or former member, agent or employee, shall divulge any facts or information obtained in connection with the administration of this act.

"(2) Any person who violates any provision of this section is guilty of a misdemeanor and shall be fined not more than $1,000.00 or imprisoned not more than 1 year in the county jail, or both."

Although IBM argues in response that the circuit court order at issue is a sufficient "judicial order" to make the confidentiality provisions of § 465 inapplicable, it is apparent that the "judicial order" exception is intended to provide agency employees a defense from criminal prosecution. The issue demands a more thorough analysis.

As we noted before, exemptions to disclosure are to be restrictively construed. Moreover, § 21(2) of the APA; MCLA 24.221(2); MSA 3.560(121)(2) indicates that whenever possible, confidential portions should be deleted in order to allow release of otherwise disclosable information. In order to preserve the taxpayers' privacy contemplated in § 465, above, the circuit court on remand must examine all of the requested information and delete identifying facts and names. The task is to separate the kernel of agency statements of law and policy from what would otherwise be confidential or identifying details. Only that information which cannot be rendered sufficiently anonymous by deletion of the party's name and other identifying information must be excluded from disclosure. See *Tax Analysts and Advocates v Internal Reve-*

*nue Service,* 362 F Supp 1298 (D DC 1973), *aff'd in part* 164 US App DC 243; 505 F2d 350 (1974), requiring disclosure of IRS letter rulings and technical advice memoranda.

B. *The Intra-Agency Memoranda Exemption*

Finally, the Revenue Division argues that this material contains intra-agency memoranda or statements which are exempt through § 22(1)(b) of the APA. This argument fails with respect to the § 195 decisions and § 421 orders of determination. These materials are released to the taxpayer. The courts in construing the similar Federal provision, 5 USCA 552(b)(5), have noted that the purpose of the exemption is to protect the decision-making processes within the agency by preserving the candor with which agency employees communicate. "Exemption 5, properly construed, calls for 'disclosure of all "opinions and interpretations" which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be'. Davis, The Information Act: A Preliminary Analysis, 34 U Chi L Rev 761, 797 (1967)." *National Labor Relations Board v Sears, Roebuck & Co,* 421 US 132, 153; 95 S Ct 1504, 1517–1518; 44 L Ed 2d 29, 48–49(1975). Where the very information that the defendant seeks to shield from view is already in the possession of the party regulated, there can be no meritorious claim that the defendant agency is protecting the integrity of its decision-making process. *Citizens For Better Care v Department of Public Health,* 51 Mich App 454, 470; 215 NW2d 576, 584 (1974).

The information contained in the hearing officer reports is more troublesome. The defendant alleges through affidavits that approximately 30% of the

reports contain "suggestions, recommendations, or proposals regarding changes to current interpretations of the Income Tax Act", and not infrequently deal with matters only indirectly related to disposition of the case. Yet it is clear that the hearing officer reports contain the bulk of legal interpretation involved in the disposition of a § 421 hearing; in most cases the Order of Determination of Tax contains little more than a statement of the hearing officer's conclusion. In order to reconcile the policy of preservation of the agency's policy-making processes with the fundamental that secret administrative law is intolerable, we must remand for an *in camera* inspection of the reports. The circuit court shall delete those statements which relate only indirectly to the disposition of the case discussed in the report. The remainder of each report will embody the agency's effective law and policy, and must be disclosed. Any reasonable doubt in categorization of a statement should be resolved in favor of disclosure.

"[P]rivate transmittals of binding agency opinions and interpretations should not be encouraged. These are not the ideas and theories which go into the making of the law, they are the law itself, and as such should be made available to the public. Thus, to prevent the development of secret law within the * * * [agency], we must require it to disclose orders and interpretations which it actually applies in cases before it." *Ash Grove Cement Co v Federal Trade Commission,* 167 US App DC 249, 252; 511 F2d 815, 818 (1975), n 12.

Remanded for proceedings not inconsistent with this opinion. No costs, since the issues involve a public question.