KESTENBAUM v MICHIGAN STATE UNIVERSITY

Docket No. 43048. Submitted October 11, 1979, at Lansing.—Decided April 22, 1980. Leave to appeal applied for.

Lawrence Kestenbaum sought from Michigan State University, pursuant to the Michigan Freedom of Information Act, a copy of a computer tape containing the names and addresses and other items of information relative to students enrolled at the university, along with the documentation, file layout and tape specifications necessary to get the information off the tape. The requested computer tape was developed by the university in order to assist the printer of the student directory in the mechanical printing process. Kestenbaum desired the information in the form of a computer tape so that he could develop a mailing list from which he could, as a commercial enterprise, make mailings of information of a political nature on behalf of parties who would pay him for that service. Michigan State University denied Kestenbaum's request on the basis that the information on the tape was exempt from the requirements of the Michigan Freedom of Information Act by reason of the Federal Family Educational Rights and Privacy Act, except in the printed form of the student directory, and the release of the computer tape would involve the release of certain technology in which the university had a proprietary interest. The university did offer to provide the information requested in the form of a copy of the student directory received from the printers or in the form of a printout of the information.

Kestenbaum brought an action in circuit court against Michigan State University and Dale Arnold, Director of Information Services for the university, seeking to compel the release of the computer tape and related retrieval information and seeking

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Costs § 72 *et seq.*
[2] 20 Am Jur 2d, Costs § 79 *et seq.*
[3] 68 Am Jur 2d, Schools § 109 *et seq.*
[4, 5] 62 Am Jur 2d, Privacy § 8.
  66 Am Jur 2d, Records and Recording Laws § 27 *et seq.*
[6] 62 Am Jur 2d, Privacy § 18.
[7-9] 66 Am Jur 2d, Records and Recording Laws §§ 19, 20.

statutory damages, attorney fees, costs and disbursements in accordance with the act. The Ingham Circuit Court, Michael G. Harrison, J., ordered defendant to supply to plaintiff an edited copy of the tape at a reasonable cost, with the edited copy containing only the student's names and addresses. This copy was to be returned to the defendant following the November, 1978, elections, and plaintiff was ordered to neither distribute the tape nor permit the use of the tape by any other party. The court refused to order an award of damages or to award attorney fees, costs or disbursements. Plaintiff appeals from the denial of any award of attorney fees, costs and disbursements. Defendant university cross-appeals. *Held:*

1. Since the university was ultimately ordered to provide only an edited version of the computer tape rather than the unedited version originally requested by plaintiff, the plaintiff is deemed to have only prevailed in part. in his circuit court action. Under such circumstances, the matter of the award of attorney fees is discretionary with the trial court. The trial court did not abuse its discretion by refusing to award plaintiff attorney fees and costs.

2. Defendant university, being a recipient of Federal funds, is subject to the provisions of the Federal Family Educational Rights and Privacy Act and the Federal regulations adopted pursuant to that act. That Federal act serves two functions: (1) it provides access to student records by students and their parents; and (2) it establishes the privacy of those records.

3. The regulations adopted pursuant to the Federal Family Educational Rights and Privacy Act classifies records maintained by educational institutions as being: (1) educational information; (2) personally identifiable information; or (3) directory information.

4. Defendant university, in order to release student records which are classified as personally identifiable information, would have to secure from a student's parent or from a student over 18 years of age a written, dated, signed document which specified the disclosable data, the purpose of the disclosure and the parties to whom disclosure might be made. The university did not secure such releases with respect to the requested information. The release of records classified as directory information, on the other hand, requires only that the educational institution give public notice of the type of information so designated and of the right of the student or parent to forbid disclosure of such information by the filing of a timely notice to that effect with the educational institution. Defendant univer-

sity did satisfy the notice requirement of the directory information regulation.

5. Since the names and addresses of students are considered to be both personally identifiable information and directory information, the release of such information does not require the written consent required for the release of personally identifiable information if no purely personal information is to be released.

6. The release of the computer tape containing student names and addresses to plaintiff for the purpose of commercial dissemination of political notices constitutes an invasion of the students' privacy, since there is not a sufficient public interest which outweighs the possible harm to the students involved. The fact that political notices are involved does not create the necessary public interest to justify the invasion of the students' privacy, since there were other adequate means by which to disseminate the information to the students.

7. The Michigan Freedom of Information Act does not require the release of the defendant university's computer tape which contains, in addition to the names and addresses, valuable technological data developed by the university at public expense, since the information subject to the act, *i.e.*, the names and addresses, could be released in a printed format which would not compromise the protected technological data.

Reversed.

1. RECORDS — PUBLIC RECORDS — FREEDOM OF INFORMATION ACT — ACTIONS — ATTORNEY FEES — COSTS — STATUTES.

A party bringing a circuit court action to compel production of a public record under the Michigan Freedom of Information Act is deemed to have prevailed only in part and thus is not statutorily entitled to reasonable attorney fees, costs and disbursements arising out of the action where the extent of the public record ordered by the court to be produced is more restricted than the public record originally requested by the party (MCL 15.240[4]; MSA 4.1801[10][4]).

2. COSTS — ATTORNEY FEES — ACTIONS — FREEDOM OF INFORMATION ACT — STATUTES.

The award of attorney fees and costs in an action brought under the Michigan Freedom of Information Act is discretionary with the trial judge where the party bringing the action to compel production of a public record prevails only in part (MCL 15.240[4]; MSA 4.1801[10][4]).

3. COLLEGES AND UNIVERSITIES — FEDERAL PRIVACY ACT — STATUTES.

    Michigan State University, being a recipient of Federal funds, falls within the scope of the provisions of the Federal Family Educational Rights and Privacy Act (20 USC 1232g, 45 CFR 99.1 *et seq.*).

4. RECORDS — COLLEGES AND UNIVERSITIES — FEDERAL PRIVACY ACT — PURPOSE — STATUTES.

    The Federal Family Educational Rights and Privacy Act serves two functions: (1) it provides access to student records by students and their parents; and (2) it establishes the privacy of those records (20 USC 1232g).

5. RECORDS — COLLEGES AND UNIVERSITIES — FEDERAL PRIVACY ACT — CLASSIFICATION OF RECORDS — STATUTES — FEDERAL REGULATIONS.

    Information contained in student records maintained by educational institutions are classified, for the purpose of the Federal Family Educational Rights and Privacy Act, as being: (1) educational; (2) personally identifiable; or (3) directory information (20 USC 1232g, 45 CFR 99.3).

6. RECORDS — COLLEGES AND UNIVERSITIES — FEDERAL PRIVACY ACT — DISCLOSURE OF RECORDS — STATUTES — FEDERAL REGULATIONS.

    Disclosure, by an educational institution which is subject to the Federal Family Educational Rights and Privacy Act, of student records classified as personally identifiable information requires that the institution secure from a student's parent or from a student over 18 years of age a written, dated, signed document which specifies the disclosable data, the purpose of the disclosure and the parties to whom disclosure may be made; disclosure of records classified as directory information requires that the educational institution give public notice of the type of information so designated and notice of the right of the student or parent to forbid disclosure by informing the institution in writing that any or all so designated categories of information should not be disclosed (20 USC 1232g, 45 CFR 99.30, 99.37).

7. RECORDS — COLLEGES AND UNIVERSITIES — DISCLOSURE OF RECORDS — FEDERAL PRIVACY ACT — DIRECTORY INFORMATION — PERSONALLY IDENTIFIABLE INFORMATION — STATUTES — FEDERAL REGULATIONS.

    The disclosure by an educational institution of the names and addresses of its students, such information being included under both personally identifiable information and directory

information classifications of the regulations promulgated pursuant to the Federal Family Educational Rights and Privacy Act, does not require written consent where the educational institution has given the notice required for disclosure of directory information and where no purely personal information is released (20 USC 1232g, 45 CFR 99.30[a][1]).

8. RECORDS — COLLEGES AND UNIVERSITIES — DISCLOSURE OF NAMES AND ADDRESSES — RIGHT OF PRIVACY — PUBLIC INTEREST — BALANCING TEST.

The disclosure by an educational institution of the names and addresses of its students contained on a computer tape to a person desiring such information for the purpose of developing a mailing list so that such person can mail political notices on behalf of others to such students constitutes an invasion of the students' privacy; the public interest in the release of such information does not outweigh the possibility of harm to the students involved, since there were other adequate means by which political information could be disseminated.

9. RECORDS — COLLEGES AND UNIVERSITIES — FREEDOM OF INFORMATION ACT — COMPUTER TAPES — ALTERNATIVE MEANS OF DISCLOSURE — STATUTES.

The Michigan Freedom of Information Act does not require a state university to produce a copy of a computer tape which contains the names and addresses of the students enrolled at the university where that information can be released in a printed format which would not also result in the release of valuable technological data developed by the university at public expense which necessarily results from the release of a copy of the computer tape (MCL 15.231 *et seq.;* MSA 4.1801[1] *et seq.).*

*Richard W. Kinkade,* for plaintiff.

*Leland W. Carr, Jr.,* and *Byron H. Higgins,* for defendants.

Before: R. B. BURNS, P.J., and D. E. HOLBROOK, JR. and P. J. GLENNIE,* JJ.

P. J. GLENNIE, J. This case is before the Court on

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

appeal by plaintiff upon denial of attorney fees and costs. Defendant Michigan State University cross-appeals on the issues of whether information on students' names and addresses is exempt from disclosure under the Family Educational Rights and Privacy Act of 1974, 20 USC 1232g, and whether the Michigan Freedom of Information Act (FOIA), MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.,* requires a public body to give to private persons, at a nominal cost, items of proprietary interest owned by the public.

The history of this case began when plaintiff filed a complaint on October 6, 1978, in Ingham County Circuit Court, alleging that the defendants had violated the Michigan Freedom of Information Act, MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.,* by refusing to give the plaintiff a *copy of a computer tape* containing student information. Defendants answered that they would provide plaintiff with a *computer print-out* of the information contained on the tape, if the information was not exempt from the FOIA under § 13(1)(e).

On October 18, 1978, the trial court ordered defendants to create a duplicate magnetic tape containing the students' names and addresses and to give the tape to the plaintiff until the conclusion of the November 1978, election, at which time the tape was to be returned to defendants. Plaintiff was ordered to pay reasonable costs for duplication. The trial court denied attorney fees, costs, disbursements or damages for the reason that the defendants' denial of the request for the tape was not arbitrary or capricious and that the matter presented involved a valid question of first impression which could have a significant effect on the rights of third persons.

The FOIA explicitly outlines the conditions un-

der which attorney fees and costs shall be awarded to the plaintiff.

MCL 15.240; MSA 4.1801(10) reads, in part:

"(4) If a person asserting the right to inspect or to receive a copy of a public record or a portion thereof prevails in an action commenced pursuant to this section, the court shall award reasonable attorneys' fees, costs, and disbursements. If the person prevails in part, the court may in its discretion award reasonable attorneys' fees, costs, and disbursements or an appropriate portion thereof. The award shall be assessed against the public body liable for damages under subsection (5).

"(5) In an action commenced pursuant to this section, if the circuit court finds that the public body has arbitrarily and capriciously violated this act by refusal or delay in disclosing or providing copies of a public record, the court shall, in addition to any actual or compensatory damages, award punitive damages in the amount of $500.00 to the person seeking the right to inspect or receive a copy of a public record. The damages shall not be assessed against an individual, but rather be assessed against the next succeeding public body, not an individual, pursuant to whose function the public record was kept or maintained."

Plaintiff contends that, since he prevailed in the action, § 10(4) required that the court order the defendants to pay attorney fees and costs. Originally, plaintiff requested a copy of the complete tape. The trial court ordered defendants to produce a copy of the names and addresses only and restricted its use to some extent. Under such circumstances, the trial court concluded that the plaintiff had only prevailed in part.

In cases of partial success, § 10(4) allows for the award of attorney fees and costs in the trial court's discretion.

It is our opinion that the trial court did not abuse its discretion. We concur with the trial

court's decision denying attorney fees, costs, compensatory and punitive damages.

In defendants' cross-appeal, we are asked to decide a question of first impression concerning the Family Educational Rights and Privacy Act (20 USC 1232g), specifically: whether that act prohibits the university from releasing confidential information about 44,000 students to the general public in a format and for uses not expressly consented to by those students.

Michigan State University is a constitutional body corporate, established pursuant to Const 1963, art 8, § 5. The university is charged with the responsibility of providing educational opportunities to the persons currently enrolled.

Plaintiff is a private individual who requested a copy of a university computer tape and the file layout of that computer tape. The tape contained the names, addresses, phone numbers, and other items of information with respect to students enrolled at Michigan State University.

Michigan State University annually prints a student directory which contains the names, local and permanent addresses, local phone numbers, year, major and numerous other items of student information. A computer tape is developed by the university in order to assist the printer in the mechanical printing process.

The trial court ruled that the students' constitutional right to privacy would not be violated if only their names and addresses were released. The court further ruled that the FOIA required that the university duplicate and deliver to plaintiff a copy of the computer tape, rather than a computer print-out.

This issue requires interpretation of the Family Educational Rights and Privacy Act of 1974 (20

USC 1232g), and the regulations published pursuant thereto. Plaintiff contends that any document "prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function * * *'" is a public record. MCL 15.232(c); MSA 4.1801(2)(c). Plaintiff further claims he is entitled to the computer tape under the FOIA, MCL 15.233(1); MSA 4.1801(3):

"Upon an oral or written request which describes the public record sufficiently to enable the public body to find the public record, a person has right to inspect, copy, or receive copies of a public record of a public body, except as otherwise expressly provided by Section 13."

Michigan State University, because it is a recipient of Federal funds, falls within the purview of the Family Educational Rights and Privacy Act (Buckley Amendment; PL 90-247, Title IV, § 438 as amended; 20 USC 1232g, 45 CFR 99.1 *et seq.*).

The latter statute serves two functions. First, it provides access to student records by students and their parents. Second, it establishes the privacy of those records. The information contained in the records is classified as being educational, personally identifiable or directory information. 45 CFR 99.3 defines each type of record. The names and addresses requested by the plaintiff fall into two of these classifications: personally identifiable information and directory information.

Pursuant to 45 CFR 99.30, educational institutions are required to follow an explicit procedure before releasing any personally identifiable student information:

"(a)(1) An educational agency or institution shall obtain the written consent of the parent of a student or

the eligible student before disclosing personally identifiable information from the education records of a student, other than directory information, except as provided in § 99.31.

"(2) Consent is not required under this section where the disclosure is up to (i) the parent of a student who is not an eligible student, or (ii) the student himself or herself.

"(b) Whenever written consent is required, an educational agency or institution may presume that the parent of the student or the eligible student giving consent has the authority to do so unless the agency or institution has been provided with evidence that there is a legally binding instrument, or a State law or court order governing such matters as divorce, separation, or custody, which provides to the contrary.

"(c) The written consent required by paragraph (a) of this section must be signed and dated by the parent of the student or the eligible student giving the consent and shall include:

"(1) A specification of the records to be disclosed.

"(2) The purpose or purposes of the disclosure, and

"(3) The party or class of parties to whom the disclosure may be made.

"(d) When a disclosure is made pursuant to paragraph (a) of this section, the educational agency or institution shall, upon request, provide a copy of the record which is disclosed to the parent of the student or the eligible student, and to the student who is not an eligible student if so requested by the student's parents."

45 CFR 99.30 thus requires that the university secure from the parent, or student over 18 years of age, a written, dated, signed document which specifies the disclosable data, the purpose of the disclosure, and the parties to whom the disclosure may be made. Michigan State University did not follow the procedure with respect to the personally identifiable information sought by the plaintiff.

The plaintiff asserts, however, that the univer-

sity complied with another section of the statute, given that the names and addresses also constitute directory information and that the regulation describing the procedure for release of directory information was followed.

45 CFR 99.37 outlines the procedure to be followed by educational institutions prior to releasing directory information. It reads:

"(a) An educational agency or institution may disclose personally identifiable information from the education records of a student who is in attendance at the institution or agency if that information has been designated as directory information (as defined in § 99.1) under paragraph (c) of this section.

"(b) An educational agency or institution may disclose directory information from the education records of an individual who is no longer in attendance at the agency or institution without following the procedures under paragraph (c) of this section.

"(c) An educational agency or institution which wishes to designate directory information shall give public notice of the following:

"(1) The categories of personally identifiable information which the institution has designated as directory information;

"(2) The right of the parent of the student or the eligible student to refuse to permit the designation of any or all of the categories of personally identifiable information with respect to that student as directory information; and

"(3) The period of time within which the parent of the student or the eligible student must inform the agency or institution in writing that such personally identifiable information is not to be designated as directory information with respect to that student."

45 CFR 99.37 thus requires the educational institution to give public notice of the type of information to be published, the right to forbid disclosure,

and the time period within which a student or parent must act to forbid disclosure.

Defendant Michigan State University complied with the regulation insofar as publication of the student directory is concerned. Michigan State University contends, however, that the approval of the student can be construed only as applying to the publication of the student directory and not to the release of the magnetic tape, for which the signed permission of the student is required under 45 CFR 99.30.

The trial court held that the students' names and addresses were included within both definitions when it stated:

"Standing alone, a name and address are not types of data which would easily or clearly trace, point out or mark an individual. Section 99.3 mentions other 'personal identifiers' around which the law cloaks privacy.

"When compared with 99.3's definition of directory, it is noted that name and address are also listed as directory-type data. Such interchangeableness among definitions tends to signal the data's nature as sometimes deserving a higher cloak of privacy and sometimes a lower. Such is not the case with other personal or directory data.

"Without question, it is a difficult line to draw, but on these facts, the Court holds such data to be directory, thus Section 99.37 applies."

That Congress recognized names and addresses as included within both classes of information is reflected in the wording of the regulations. 45 CFR 99.30(a)(1) requires written consent of the parent or student before disclosure of personally identifiable information *other than directory information.* This exempts from the written consent requirement data which is included in both definitions, so

long as no purely personal information is released. Names and addresses only thus would not fall under 45 CFR 99.30(a)(1).

The notice published in the student handbook and Michigan State University Bulletin complies with the requirements of 45 CFR 99.37(c). It would therefore appear that the trial court's order was not contrary to the Family Educational Rights and Privacy Act of 1974.

Another question which arises is whether the release of such information to plaintiff constituted a violation of the students' right to privacy. The FOIA, § 13(1)(a), exempts from disclosure "[i]nformation of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy". The trial court determined that the release of the names and addresses was justified on the basis that the information released would be used to inform the students of political issues:

"There can be no question but that the disclosure of a person's name and address does constitute an invasion of privacy. Disclosure of the magnetic tape would involve a release of each student's address; information the student might wish to remain secret or selectively release [sic]. One consequence of any disclosure is that a student will be subject to unsolicited or unwanted mail and possibly offensive material. * * *

"The purpose for which Plaintiff seeks the magnetic tape is to assist in a political campaign mailing. Clearly, informing the electorate of candidates' views and qualifications helps voters make intelligent choices in the democratic process. It is not a commercial purpose but political and necessary to the workings of a free society.

"On balance, while an invasion occurs, it is warranted in the public purpose. Exemption (a) does not prevent disclosure of the magnetic tape."

In *International Business Machines Corp v Dep't of Treasury,* 71 Mich App 526, 535; 248 NW2d 605 (1976), the Court, in discussing disclosure provisions, stated:

"The Michigan disclosure provisions are essentially an abbreviated version of the Federal Freedom of Information Act (FOIA), 81 Stat 54 (1967), 5 USCA 552. The close similarity between the Federal and state acts' language makes constructions of the FOIA by the Federal courts persuasive in construction of our own disclosure requirements. *Citizens for Better Care v Dep't of Public Health,* 51 Mich App 454, 463; 215 NW2d 576 (1974), *lv den,* 392 Mich 758 (1974)."

In *Citizens for Better Care,* the plaintiff sought disclosure of nursing home records kept by the Michigan Department of Health. The issue of patient privacy was resolved on the basis that the patients' privacy could be safeguarded by deleting from the reports, prior to disclosure, any information indicating the identity of specific patients. 51 Mich App 454, 470. Such a solution is not possible in the present case since plaintiff specifically requested the names and addresses of Michigan State University students.

Two Federal cases have considered the question of whether the release of names and addresses constituted an unwarranted invasion of privacy. In *Getman v National Labor Relations Board,* 146 US App DC 209; 450 F2d 670 (1971), two law professors wanted a list of names and addresses of employees eligible to vote at NLRB elections. The NLRB denied their request, claiming that such a disclosure would constitute an invasion of the privacy of the voters. The court disagreed and stated:

"[O]ur first inquiry is whether disclosure of the names and addresses of employees constitutes an invasion of privacy and, if so, how serious an invasion. We find that, although a limited number of employees will suffer an invasion of privacy in losing their anonymity and in being asked over the telephone if they would be willing to be interviewed in connection with the voting study, the loss of privacy resulting from this particular disclosure should be characterized as relatively minor. Both the House and Senate reports on the bill which became the Freedom of Information Act indicate that the real thrust of Exemption (6) is to guard against unnecessary disclosure of files of such agencies as the Veterans Administration or the Welfare Department or Selective Service or Bureau of Prisons, which would 'intimate details' of a 'highly personal' nature. * * *

"In determining whether this relatively minor invasion of privacy is 'clearly unwarranted,' we must also weigh the public interest purpose of appellees' NLRB voting study, the quality of the study itself, and the possibility that appellees could pursue their study without the * * * lists." (Footnotes omitted.) 146 US App DC 209, 213–214.

In *Wine Hobby USA, Inc v United States Internal Revenue Service,* 502 F2d 133 (CA 3, 1974), plaintiff sought a list of the names and addresses of persons filing for a permit to make wine for home use from the Bureau of Alcohol, Tobacco and Firearms. Plaintiff intended to send advertisements concerning its amateur wine-making equipment to the home wine-makers. The court held that the release of the names and addresses would constitute an invasion of privacy since the people on the list would be subjected to unsolicited and possibly unwanted mail. Since plaintiff was seeking the list for private commercial exploitation, no compelling public interest would be served by releasing the information. The pertinent language from that case is as follows:

"The disclosure of names of potential customers for commercial business is wholly unrelated to the purposes behind the Freedom of Information Act and was never contemplated by Congress in enacting the Act. In light of this failure by Wine Hobby to assert a public interest purpose for disclosure, we conclude that the invasion of privacy caused by disclosure would be 'clearly unwarranted,' even though the invasion of privacy in this case is not as serious as that considered by the court in other cases, *see e.g., Rose v Dep't of the Air Force,* 495 F2d 261 (2d Cir 1974). On balance, therefore, we believe that the list of names and addresses of the Form 1541 registrants is exempted from disclosure under § 552(b)(6) in the circumstances of this case." (Footnote omitted.) 502 F2d 133, 137.

A person seeking information under the Michigan Freedom of Information Act is not generally required to divulge the reason for the request. Where an invasion of privacy may occur, however, the person seeking disclosure is required to show that the benefit to the public interest in releasing the information outweighs the possibility of harm to the people involved.

Section 1 of the FOIA states that it is the "public policy of this state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees * * *. The people shall be informed so that they may fully participate in the democratic process." MCL 15.231(2); MSA 4.1801(1)(2). The list of names requested by plaintiff is not related to the affairs of government in such a way as to constitute a basis for official decisions on the part of the university. The release of these names and addresses and the other information contained in the student directory does not assist the general public in such a way as to

permit them to fully participate in the affairs of government. The only reason plaintiff desired the information in the form requested was to develop a mailing list so that plaintiff could engage in a commercial enterprise of mailing notices for and on behalf of other parties who pay for the service. We do not believe that this purpose outweighs the invasion of the students' privacy which would result, particularly where plaintiff had other means of disseminating information of a political nature without discovering the names and addresses of the students. Plaintiff could have passed out leaflets at the dormitories, at rallies, and in the streets of East Lansing. Plaintiff could have made a general mailing to the electorate in the name of "occupant". Michigan State University has a radio and television station which plaintiff could have employed to convey such political views. Plaintiff could also purchase the student directory at a nominal cost, when it became available.

This issue was discussed in a recent Florida decision. *Byron, Harless, Schaffer, Reid & Assoc, Inc v Florida,* 360 So 2d 83 (Fla App, 1978). Florida has a public records act which would require public officials and employees to save all notes and memoranda and make such documents available to the public. The court was faced with a demand by a television executive and the attorney general for the release of notes made by a consultant firm hired to interview and select the director of a utility company owned by a public agency. The court construed the notes made by the consultant as public records within the meaning of the Florida statute. It became clear to the court that, upon examining the notes, much of the information was highly confidential. In refusing to make

these records available to the general public pursuant to the applicable statutes, the Florida court made the following observations:

"In general application, Florida's public records law and its companion, the open public meetings law, promote a state interest of the highest order. By promoting open government and citizen awareness of its workings * * * [the statutes] enhance and preserve democratic processes. Florida's interest in opening governmental processes to public inspection has repeatedly been emphasized in decisions of our Supreme Court.

*   *   *

"When fundamental privacy interests secured by the due process clauses of the United States and Florida Constitutions are implicated, however, it is not enough that the statute generally serves a compelling interest in disclosure of public records. There must be a compelling state interest in the public revelation of the particular information in which the prospects would otherwise enjoy privacy. To override constitutional privacy interests, a countervailing state interest must exist and be compelling at the point where those interests collide. When the public interest is not sufficiently compelling to override constitutional privacy interests in the particular information sought, an intrusive statute 'must be narrowly drawn to express only the legitimate state interests at stake,' [Roe v Wade, 410 US at 155; 93 S Ct at 728; 35 L Ed 2d at 178] or its general terms must be appropriately narrowed in judicial application." (Footnotes omitted.) 360 So 2d 83, 97.

One other factor bears significantly on our decision. It is a well established principle of law that public funds may not be used to support a private purpose. To require the university to surrender property of commercial value to a private party, when the information required can be released without surrendering the public property, contravenes this established rule of law. Const 1963, art

9, § 18, *Skutt v Grand Rapids,* 275 Mich 258; 266 NW 344 (1936).

Neither the preamble to the FOIA nor its purpose states that it was the intent of the Legislature to surrender publicly-owned property free of charge to private enterprise. *Arnold v Ogle Construction Co,* 333 Mich 652; 53 NW2d 655 (1952), *People v Stanley,* 344 Mich 530; 75 NW2d 39 (1956), *Butcher v Grosse Ile Twp,* 387 Mich 42; 194 NW2d 845 (1972). The computer tape which plaintiff requested constitutes publicly-owned property of commercial value aside from the information contained thereon. Defendant thus should not have been required to provide plaintiff with such property.

In *General Services Administration v Benson,* 415 F2d 878, 880 (CA 9, 1969), the following principle of law was enunciated:

"In exercising the equity jurisdiction conferred by the Freedom of Information Act, the court must weigh the effects of disclosure and nondisclosure, according to the traditional equity principles, and determine the best course to follow in the given circumstances. The effect on the public is the primary consideration."

It is evident there is a tendency to interpret the FOIA as a freedom of public records act. When a statute is so broad that it makes all information available to anyone for any purpose, the court has an obligation to narrow its scope by judicial interpretation.

It is our opinion that the computer tape is exempt from release under § 13(a) of the FOIA for the reason that the public purpose of dissemination of political views could have been accomplished by other means without invading the privacy of the individual students. The FOIA provides

for freedom of information, not freedom to acquire valuable technological data which was developed at public expense, nor highly personal and sensitive information through records maintained by the university. Finally, release of the information would not further the purpose of the FOIA since plaintiff sought this information for commercial gain, not so that he might be able to monitor governmental affairs.

Reversed. No costs, a public question being involved.