THE EVENING NEWS ASSOCIATION v CITY OF TROY

Docket No. 47228. Submitted April 14, 1980, at Detroit.—Decided
    November 20, 1980. Leave to appeal applied for.

In July, 1979, two City of Troy police officers responded to a radio
report concerning a larceny from a motor van. The owner of
the vehicle, armed with a pellet gun, was inside the van.
During the investigation, the owner was shot and killed by one
of the police officers. Thereupon, the officers filed reports relat-
ing to the incident.

The Evening News Association, publisher of the Detroit
News, made several requests for copies of the police reports.
The Troy Chief of Police refused to comply with the request.
Subsequently, the Evening News Association brought an action
in Oakland Circuit Court to compel disclosure under the Free-
dom of Information Act against the City of Troy and John T.
Donovan, individually, and as Chief of Police of the City of
Troy. The Troy Police Association intervened as a defendant.

The defendants claim the information contained in the police
reports are exempt from disclosure because production would
result in the interference with law enforcement proceedings,
the impairment of the right to a fair trial, the invasion of
personal privacy, the disclosure of confidential sources and
investigative techniques, and the endangering of the officers'
physical safety.

Robert L. Templin, J. ordered that plaintiff's request for
disclosure be denied because release of the information would
interfere with law enforcement proceedings.

Plaintiff appeals, alleging that the testimony that was pre-
sented at the hearing to show an interference with law enforce-

REFERENCES FOR POINTS IN HEADNOTES
[1] 66 Am Jur 2d, Records and Recording Laws § 33.
[2] 66 Am Jur 2d, Records and Recording Laws § 36 *et seq.*
[3] 66 Am Jur 2d, Records and Recording Laws § 41.
What constitutes investigatory files exempt from disclosure under
    Freedom of Information Act (5 USCS § 552(b)(7)). 17 ALR Fed
    522.
[4] 66 Am Jur 2d, Records and Recording Laws § 45.

ment proceedings was nothing more than speculative and conclusory assertions without basis in fact, and that absent a specific showing that disclosure would cause a significant impediment to the criminal investigation, the police reports should have been disclosed. *Held:*

1. The public policy underlying the Michigan Freedom of Information Act, which provides for the disclosure of certain public records concerning the official acts of a governing body, focuses on the necessity to insure that an informed public fully participates in the democratic process.

2. The burden of proof for establishing an exemption under the Michigan Freedom of Information Act is on the governmental agency claiming such an exemption.

3. A generic determination that interference is likely to occur in a particular kind of enforcement proceeding satisfies the public body's burden of proof under the Freedom of Information Act's exemption from interference with enforcement proceedings in general, where disclosure could cause a chilling effect on the investigation by inducing reluctance in other witnesses to speak freely.

4. The News Association's interest in publishing current news and the liberal purpose of full disclosure under the Freedom of Information Act do not outweigh the interest of the public that enforcement proceedings remain unhampered. The production of the incident reports would have hampered possible enforcement proceedings. Disclosure could have caused a chilling effect on the investigation by inducing reluctance in other witnesses to speak freely about the incident. The incident reports sought by the Evening News Association were investigatory records compiled for law enforcement purposes and their disclosure would have interfered with enforcement proceedings.

Affirmed.

1. STATUTES — FREEDOM OF INFORMATION ACT — PUBLIC POLICY.

The public policy underlying the Michigan Freedom of Information Act, which provides for the disclosure of certain public records concerning the official acts of a governing body, focuses on the necessity to insure that an informed public fully participates in the democratic process (MCL 15.231[2]; MSA 4.1801[1][2]).

2. STATUTES — FREEDOM OF INFORMATION ACT — EXEMPTIONS — BURDEN OF PROOF.

The burden of proof for establishing an exemption under the

Michigan Freedom of Information Act is on the governmental agency claiming such an exemption.

3. STATUTES — FREEDOM OF INFORMATION ACT — EXEMPTIONS — BURDEN OF PROOF.

A generic determination that interference is likely to occur in a particular kind of enforcement proceeding satisfies the public body's burden of proof under the Freedom of Information Act's exemption from interference with enforcement proceedings in general where disclosure could cause a chilling effect on the investigation by inducing reluctance in other witnesses to speak freely (MCL 15.243[1][b][i]; MSA 4.1801[13][1][b][i]).

4. STATUTES — FREEDOM OF INFORMATION ACT — NEWSPAPERS — PURPOSES.

A newspaper publisher's interest in publishing current news and the liberal purpose of full disclosure under the Freedom of Information Act do not outweigh the interest of the public that enforcement proceedings remain unhampered (MCL 15.231 *et seq.;* MSA 4.1801[1] *et seq.).*

*Butzel, Long, Gust, Klein & Van Zile* (by *James E. Stewart* and *John J. Ronayne, III),* for plaintiff.

*William S. Wolanin,* City Attorney, for defendant City of Troy.

*John A. Lyons, P.C.,* for Troy Police Department.

Amici Curiae:

*L. Brooks Patterson,* Prosecuting Attorney, and *Robert C. Williams,* Chief Appellate Counsel, for the Oakland County Prosecuting Attorney.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Vincent J. Leone,* Assistant Attorney General, for the Attorney General.

Before: M. F. CAVANAGH, P.J., and R. M. MAHER and D. F. WALSH, JJ.

D. F. WALSH, J. Pursuant to the Michigan Freedom of Information Act, MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* (hereinafter FOIA), plaintiff sought disclosure of certain incident reports compiled by two officers of the Troy Police Department. Plaintiff appeals the decision of the circuit court that due to the ongoing criminal investigation the records were exempt from disclosure because disclosure would interfere with enforcement proceedings.

In the early morning hours of July 31, 1979, two Troy police officers responded to a radio report concerning a larceny from a motor vehicle. The vehicle involved was a van, and the van's owner was inside armed with a pellet gun. During the investigation of the complaint, the owner was shot and killed by the officers. Subsequently, the policemen filed the customary reports relating to the incident.

Plaintiff, Evening News Association, publisher of the Detroit News, made several requests for copies of the incident reports. However, the Troy Police Chief refused to comply with the demands. On August 27, 1979, plaintiff brought an action to compel disclosure under the FOIA.

At a hearing on September 11, 1979, defendants argued that the reports were exempt from disclosure on the grounds that their production would result in interference with law enforcement proceedings, the impairment of the right to a fair trial, invasion of personal privacy, the disclosure of confidential sources and investigative techniques, and endangering of the officers' physical safety under MCL 15.243(1)(b)(i)-(vi); MSA 4.1801(13)(1)(b)(i)-(vi).

Richard Thompson, Chief Assistant Prosecutor for Oakland County, testified that his office, to-

gether with the Troy Police Department, was in the midst of a joint criminal investigation of the July shooting as well as a number of recent larcenies from vans in the area. Testimony indicated that witnesses, both neighbors and police officers, were in the process of being interviewed, and other crime scene investigations were ongoing. According to testimony, the police incident reports, which included a running account of all occurrences on the night of the shooting, contained statements by the responding police officers and several neighbors who were potential witnesses and a description of the evidence that was seized. It was the general policy of the prosecutor's office to withhold the details of any continuing investigation, particularly where the question of the existence of criminal conduct had not yet been determined, according to the testimony.

Thompson testified further that the release of the report would have a chilling effect on the investigator's ability to interview additional witnesses who might refuse to give any information or alter their statements. The assistant prosecutor was also concerned with the possibility that the suspects related to the larcenies might flee the area if any information were disclosed. Thompson stated that several of the neighbors were considered confidential sources, and that the police department had received a threatening letter, which, however, had not yet been investigated. Thompson concluded his testimony by estimating that the investigation would probably be terminated within a period of two weeks from the date of the hearing.

Two other police department employees testified concerning two nonthreatening prank telephone calls received at the police station and general

negative comments about the officers involved in the incident, which were heard while the witnesses were on road patrol. The department also received at least three telephone inquiries as to the identity of the officers involved in the shooting.

The Troy Police Chief, John Donovan, testified that the results of the pending investigation might lead to administrative disciplinary proceedings against the officers. Donovan related the department policy not to issue any information, particularly the identity of an individual while an incident is under investigation, until the individual is formally charged. Donovan also stated that in the past information contained in incident reports had been disclosed when the investigation was not in progress.

In denying plaintiff's request for disclosure, the circuit court concluded that the release of the information would interfere with law enforcement proceedings. Focusing on the confidential statements of the witnesses, the potential chilling effects on the investigation and the negative citizen feedback directed toward the Troy Police Department, the trial court decided that the public interest would be best served by the denial of plaintiff's request. The court noted that disclosure could jeopardize the criminal investigation, result in the obtaining of conflicting statements by the witnesses and further inflame an already emotional public.[1]

Plaintiff claims on appeal that the testimony that was presented to show an interference with law enforcement proceedings amounted to nothing more than speculative and conclusory assertions

---

[1] Subsequent to the circuit court's ruling, the prosecutor, on September 24, 1979, released his report on the incident and his investigation thereof, in which the two officers were exonerated of any criminal responsibility.

without any basis in fact. Plaintiff argues that in order to satisfy the burden of proof under the statute, it was imperative that there be a specific showing that disclosure would cause a significant impediment to the criminal investigation. Absent such proof, plaintiff contends that the trial court erred in failing to require that the police reports be disclosed. We find plaintiff's argument unpersuasive.

The Michigan Freedom of Information Act provides for the disclosure of certain public records concerning the official acts of a governing body. The public policy underlying the statute focuses on the necessity to ensure that an informed public fully participates in the democratic process. MCL 15.231(2); MSA 4.1801(1)(2). However, this statutory scheme protects important rights of privacy and confidentiality through the creation of various exemptions. MCL 15.243; MSA 4.1801(13). The burden of proof is on the governmental agency to establish that the exemption is applicable to the requested records. MCL 15.240(1); MSA 4.1801(10)(1).

The exemption relevant to the instant case concerns investigative records compiled for law enforcement purposes to the extent that disclosure would "interfere with law enforcement proceedings". MCL 15.243(1)(b)(i); MSA 4.1801(13)(1)(b)(i). The police incident reports sought by plaintiff obviously fall under "investigatory records compiled for law enforcement purposes". Whether their disclosure would "interfere with enforcement proceedings", however, is contested. Since there is no relevant Michigan authority on this issue, we refer to Federal court decisions interpreting the analogous provision in the Federal FOIA, namely, 5 USC 552(b)(7)(a) (hereinafter referred to as exemption 7A). *Penokie v Michigan Technological*

*University,* 93 Mich App 650; 287 NW2d 304 (1979), *International Business Machines Corp v Dep't of Treasury,* 71 Mich App 526; 248 NW2d 605 (1976), *Citizens for Better Care v Dep't of Public Health,* 51 Mich App 454; 215 NW2d 576 (1974).

In *National Labor Relations Board v Robbins Tire & Rubber Co,* 437 US 214; 98 S Ct 2311; 57 L Ed 2d 159 (1978), the employer's FOIA request involved the statements of witnesses whom the labor board intended to call at a forthcoming unfair labor practice hearing. The board argued that the statements fit within the 7A exemption since any disclosure would interfere with enforcement proceedings. The lower courts concluded that 7A was inapplicable because the board did not claim that disclosure would pose a unique danger of interference with this specific proceeding. The Supreme Court reversed, relying on both the language and the structure of the statute.

The wording of exemption 7A was noted as expressly different from exemptions under subdivisions 7B, 7C and 7D, which refer to the deprivation of the right to a fair trial, an unwarranted invasion of personal privacy and the revealing of a confidential source, respectively. Unlike these specific exemptions which require a showing of a particularized risk in each individual case, 7A refers only to interference with "enforcement proceedings" in general. Therefore, a generic determination that interference is likely to occur in a particular kind of enforcement proceeding would satisfy the public body's burden of proof under 7A. The governing agency need only demonstrate that the documents related to an ongoing investigation or would effectively hamper a future enforcement proceeding.

In *Robbins,* the Court stated that while exemption 7A was designed to eliminate blanket exemptions for government records, this factor did not require that the government make a specific showing of a particularized risk. The legislative purpose underlying the exemption was to assure that the records were not endlessly protected from disclosure solely on the basis that they belonged to an investigatory file. Where, as in *Robbins,* an imminent adjudicative proceeding would preclude disclosure only for a finite duration, this purpose has been met. The Court commented as follows:

"The tenor of this description of the statutory language clearly suggests that the release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against." 437 US 214, 232.

In determining whether the labor board had met its burden of proof under 7A, the Court weighed the strong presumption in favor of disclosure under the FOIA against the likelihood that the delicate balance between parties in unfair labor practice proceedings would be disturbed. In emphasizing the potential danger of witness intimidation, the Court noted that coercion by either the employer or the union could have a chilling effect on the board's sources. Any disclosure would also serve to expand the discovery process and provide the litigant with earlier and greater access to the board's evidentiary materials. In concluding that the dangers of premature release of the requested documents outweighed the strong presumption in favor of FOIA disclosure, the Court held that a witness's statements in pending unfair labor practice proceedings are exempt from FOIA disclosure

at least until the completion of the board's hearing.

Although the majority opinion in *Robbins* spoke solely to labor board enforcement proceedings, the concurrence, authored by Justice Stevens and joined by two other Justices, noted that the majority's rationale applied to any enforcement proceeding. Subsequent Federal court decisions have expanded *Robbins* to settings other than labor law. See *Amolsch & Madden, Inc v FTC*, 192 US App DC 200; 591 F2d 809 (1978) (a Federal Trade Commission compliance report), and *Zeller v United States*, 467 F Supp 487 (ED NY, 1979) (Interstate Commerce Commission records).

In *Grabinski v IRS*, 478 F Supp 486 (ED Mo, 1979), the district court held that the IRS investigative records were exempt because they had been submitted to the United States Attorney's office, which was in the process of considering whether to pursue any prosecutions. In *Kanter v Internal Revenue Service*, 478 F Supp 552 (ND Ill, 1979), the court decided that certain IRS documents were not available to the plaintiffs, who were under indictment. The court listed the types of interference encompassed by the exemption as follows:

"These grounds include fears of disclosure of (1) evidence, (2) witnesses, (3) prospective testimony, (4) the reliance placed by the government upon the evidence, (5) the transactions being investigated, (6) the direction of the investigation, (7) government strategy, (8) confidential informants, (9) the scope and limits of the government's investigation, (10) prospective new defendants, (11) materials protected by the Jencks Act, (12) attorney work product, (13) the methods of surveillance, (14) subjects of surveillance." *Kanter v IRS, supra,* 555.

Finally, in *Steinberg v IRS,* 463 F Supp 1272 (SD Fla, 1979), documents compiled in conjunction

with an ongoing investigation of criminal and civil violations of the tax code were found to be exempt under 7A. After noting the concern of the *Robbins* court to prevent access to files earlier than provided in the normal discovery process, the court stated:

"The Court cannot conceive of any enforcement proceeding in which there exists greater potential for harm than that which might arise in an ongoing criminal investigation." *Steinberg v IRS, supra,* 1274.

The *Robbins* decision has also been discussed in the context of an FOIA request for FBI records. In *Ryan v Dep't of Justice,* 595 F2d 954 (CA 4, 1979), an FBI employee sought the disclosure of a memorandum dealing with the restricting of his official, covert activity. The Justice Department contended that 7A was applicable. The Fourth Circuit agreed with the district court's conclusion that the memorandum was exempt as an investigative record "which was part of an ongoing criminal investigation". 595 F2d 956. The *Ryan* court made no further comment with respect to the likely interference in the enforcement proceeding.

In the instant case, plaintiff, a newspaper publisher, sought disclosure of police incident reports which contained statements by the responding officers, who were potential defendants in both administrative and criminal proceedings. At the time of the FOIA request, the reports were an integral part of the documents used in the ongoing criminal investigation by the county prosecutor and a local police department. A possible prosecution based on the contents of these reports was still pending. It is important to note that the

continuing investigation was of a limited duration, approximately two additional weeks.

Moreover, the fact that the plaintiff in this case was not a party to an enforcement proceeding seeking otherwise unavailable discovery through FOIA disclosure does not sufficiently distinguish *Robbins* so as to make the rationale of that decision inapplicable to the facts before us here.

A review of the testimony presented at the hearing supports the defendant's position that their burden of proof was satisfied. Plaintiff's interest in publishing current news and the liberal purpose of full disclosure under the FOIA do not outweigh the interest of the public that enforcement proceedings remain unhampered.

We are persuaded that the trial court's determination, based upon generic evidence, that the production of the incident reports would have hampered possible enforcement proceedings was not erroneous. Disclosure could have caused a chilling effect on the investigation by inducing reluctance in other witneses to speak freely about the incident. Besides, the criminal investigation was projected to be completed within a two-week period making the danger of perpetual withholding of the documents practically nonexistent in the present case.

We conclude that the incident reports sought by the plaintiff were "investigatory records compiled for law enforcement purposes" and that their disclosure would have "interfere[d] with enforcement proceedings".

The trial court's ruling that the reports were exempt from disclosure under the Michigan Freedom of Information Act is affirmed. No costs, a public question.