PENNINGTON v WASHTENAW COUNTY SHERIFF

Docket No. 57413. Submitted January 11, 1982, at Lansing.—Decided May 5, 1983.

    Joseph L. Pennington requested investigative records from the Washtenaw County Sheriff pursuant to the Freedom of Information Act. The sheriff refused to release all the records requested, and some of those released had portions deleted. Pennington filed a complaint in Jackson Circuit Court to compel disclosure. The action was transferred to Washtenaw Circuit Court, where defendant moved for summary judgment on the ground that there was no genuine issue of material fact, claiming that the information which was not released was exempt from disclosure under the provisions of the act. Following an *in camera* view of the records sought by plaintiff, the trial court granted summary judgment in defendant's favor, Patrick J. Conlin, J. Plaintiff appeals. *Held:*

    1. The trial court erred in granting summary judgment in defendant's favor. Defendant failed to file affidavits supporting its motion for summary judgment. Such failure mandates reversal, regardless of whether the pleadings or other proof would support the motion.

    2. Even if defendant had filed the necessary affidavits, whether it met its burden justifying nondisclosure is unclear. The trial court made only conclusory findings at the *in camera* hearing and, as a result, the Court of Appeals cannot determine whether the trial court's decision was proper. Remand is necessary so that the trial court can articulate the reasons for its decision.

    Reversed and remanded.

1. JUDGMENTS — SUMMARY JUDGMENT — MOTIONS — AFFIDAVITS — COURT RULES.

    A party moving for summary judgment on the ground that there is no genuine issue of material fact must file supporting affida-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 73 Am Jur 2d, Summary Judgment § 16.

[2-4] 66 Am Jur 2d, Records and Recording Laws § 43 *et seq.*

[5] 66 Am Jur 2d, Records and Recording Laws § 36.

vits; failure to do so necessitates reversal, regardless of whether the pleadings and other proof would support the motion (GCR 1963, 117.2[3], 117.3).

2. JUDGMENTS — SUMMARY JUDGMENT — FREEDOM OF INFORMATION ACT — AFFIRMATIVE DEFENSES — AFFIDAVITS.

It is incumbent upon a public body which seeks a summary disposition of its affirmative defense to a Freedom of Information Act suit against it to offer to the trial court affidavits or other materials sufficient to show that failure of its defense is factually impossible; in the absence of such an offer, the summary judgment cannot stand (MCL 15.231 *et seq.;* MSA 4.1801[1] *et seq.).*

3. ACTIONS — FREEDOM OF INFORMATION ACT — BURDEN OF PROOF.

Once a request for information has been made under the Freedom of Information Act and the request has been denied by the failure of the public body to respond to the request, the party seeking the information need only make a showing in circuit court that the request was made and denied; thereafter, the burden is on the defendant to show a viable defense (MCL 15.240[1]; MSA 4.1801[10][1]).

4. ACTIONS — FREEDOM OF INFORMATION ACT — EXEMPT INFORMATION.

The courts have developed three devices to aid in solving procedural difficulties and problems of proof where a defendant public body contends that information sought by a plaintiff under the Freedom of Information Act is exempt from disclosure: (1) *in camera* inspection of the information, (2) submission by the public body of affidavits describing the disputed materials in sufficient detail to allow effective argument by the seeker and a fully informed decision by the court, and (3) in addition to either of the two foregoing methods, testimony.

5. ACTIONS — FREEDOM OF INFORMATION ACT — EXEMPT INFORMATION — JUDICIAL CONSTRUCTION.

The disclosure exemptions of the Freedom of Information Act are to be construed narrowly, and claimed exemptions must be supported by substantial justification and explanation, not merely by conclusory assertions (MCL 15.243; MSA 4.1801[13]).

Joseph Lee Pennington *(in propria persona).*

*Office of the Corporation Counsel for Washtenaw County* (by *Eliot G. Striar),* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and J. H. GILLIS and C. J. HOEHN,* JJ.

D. E. HOLBROOK, JR., P.J. Plaintiff requested investigative records from the Washtenaw County Sheriff, pursuant to the Freedom of Information Act (FOIA), MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.* Defendant refused to release all the records requested and some of those released had portions deleted. Plaintiff filed a complaint in the trial court to compel disclosure. Defendant moved for summary judgment. Following an *in camera* view of the records sought by plaintiff, the trial court granted defendant's motion. Plaintiff apeals as of right.

On December 8, 1977, defendant pled guilty in Washtenaw County Circuit Court to one count each of kidnapping, second-degree criminal sexual conduct, and felony-firearm. He was sentenced to 10 to 50 years, 10 to 15 years, and 2 years, respectively. Defendant appealed to this Court, challenging the validity of his guilty plea. This Court affirmed his conviction in an unpublished per curiam opinion on October 17, 1979 (Docket #78-1341). The Supreme Court denied leave to appeal on March 17, 1980. 408 Mich 865 (1980).

On March 5, 1979, plaintiff wrote to defendant requesting:

"(1) a listing of each and all records and or documents, and (2) a copy of each and all records and or documents contained in all of the files of the Washtenaw County Sheriff Department indexed and or maintained under my name and all documents returnable by a search for documents containing my name."

On March 12, 1979, defendant released documents

* Circuit judge, sitting on the Court of Appeals by assignment.

contained in plaintiff's Washtenaw County Jail inmate file.

On March 24, 1979, plaintiff again wrote to defendant:

"This letter is a continuous request for fulfillment of the total Freedom of Information Act prior request of March 5, 1979."

\*    \*    \*

"It is appreciated your sub department compliance with part of the Freedom of Information Act request. Still requested of the Sheriff Department is a full listing of *each* and *all* records and documents contained in *all* files of the washtenaw *[sic]* county sheriff department indexed and or maintained under my name and all documents returnable by a search for documents containing my name.

"It is consider *[sic]* that the Freedom of Information Act requires a search of *all* files maintain *[sic]* by a *[sic]* agency, not just part of a *[sic]* agency *[sic]* files. Therefore, you are requested to inquire of each of the subdepartment's of the overall washtenaw *[sic]* county sheriff department to check and search their files accordingly to properly fulfill the FOIA request."

Plaintiff also sought medical records, security reports, transfer documents, and personal property listings which pertained to him. Defendant failed to respond.

On March 7, 1979, plaintiff wrote to defendant, renewing his request for a *list* of all records or documents containing his name or maintained under his name. Defendant responded on March 14, 1979, stating that all documents contained in plaintiff's criminal file, other than medical records, had been released. Defendant also furnished plaintiff with medical release forms at that time.

On March 23, 1979, plaintiff returned the completed medical release forms. He also renewed his

request for a *copy* of all records or documents contained in any department file containing or maintained under his name. Specifically,

"[s]uch request is consider *[sic]* to cover the public records and or documents contained within the files of the Detective section of the washtenaw *[sic]* county sheriff department. Detective S. Harris was the investigator for the criminal matter, which your agency was the controlling investigating agency and which pursue the filed charges. Thus surely your agency maintain *[sic]* records of the investigations, which it participates in, and filed charges as a result of such investigations.

"Therefore, in compliance with the March 5, 1979 freedom of information request, you are asked to have forwarded to me the records and documents pertaining to the criminal matter your agency investigated and caused to have charges filed against me."

Defendant responded on May 15, 1979, supplying plaintiff with only his medical records, stating:

"[t]his department has certainly complied with your requests under the Freedom of Information Act.

"Your request of a copy of the criminal investigation report conducted by Detective Harris will not be sent to you. Criminal investigative reports are exempt from disclosure as a public record under Section 13(b), Freedom of Information Act."

On June 5, 1979, plaintiff filed a complaint *in propria persona* in Jackson County Circuit Court seeking:

"each and all the records and or documents indexed and or maintained under plaintiff *[sic]* name, or in reference to plaintiff under any means, and all documents returnable by a search for documents containing plaintiff *[sic]* name within the defendant *[sic]* files and or all defendant *[sic]* sub-unit files * * * [and]

"the defendant to conduct a search of each and all of its and its sub-units files for any references to plaintiff by name, or identification number, nature of contact with defendant, and or what so ever means the defendant maintains information in regards to individuals, its *[sic]* has had contact with during the ordinary course of business."

Pursuant to the FOIA, he also sought costs and attorney fees, MCL 15.240(4); MSA 4.1801(10)(4), and $500 punitive damages, MCL 15.240(5); MSA 4.1801(10)(5).

On June 5, 1979, upon motion of the Jackson County Circuit Court, the action was transferred to Washtenaw County as that was found to be plaintiff's residence for purposes of the FOIA. An order to that effect was entered the same day.

Due to problems encountered in serving defendant, an answer was not filed until October 30, 1979. As affirmative defenses, defendant asserted that:

"[t]he records in the investigative file are exempt from disclosure under the Freedom of Information Act pursuant to MCL 15.243(1)(b)(i), (ii) and (iii) and MCL 15.243(i)(t)(vii), as they contain personal information about the victim of plaintiff's crime, and as their release might interfere with law enforcement activity. In particular, as plaintiff has appealed his guilty plea, and may be tried for the crime which is the subject of the file, the release of this file might interfere with the right of the people of the State of Michigan to receive a fair trial."

"In addition, the investigative file in question is exempt pursuant to GCR 785.1(2) which makes discovery in criminal cases discretionary with the court."

Plaintiff replied on November 8, 1979, stating that there was no evidence to support defendant's

assertions of its affirmative defenses and, further, that criminal discovery was an irrelevant matter.

On March 12, 1980, copies of the disputed documents were released to the trial court for an *in camera* inspection. On November 4, 1980, an order issued which stated that the trial court would view the disputed documents *in camera* before resolving the controversy.

On November 18, 1980, defendant moved for summary judgment pursuant to GCR 1963, 117.2(3). However, no supporting affidavits were submitted, as required by GCR 1963, 117.3. Also, at that time, since plaintiff had exhausted his criminal appeals, defendant was willing to release an expurgated copy of one disputed report. Plaintiff answered the motion on December 4, 1980, and supplied an affidavit setting forth items of factual dispute.

On March 23, 1981, the trial court issued a written opinion finding that the deleted portions of the one disputed report and the entire report containing the interview with the victim were exempt from disclosure pursuant to MCL 15.243(1)(b)(iii); MSA 4.1801(13)(1)(b)(iii). Upon release of the expurgated report, defendant's motion for summary judgment would be granted. Summary judgment was granted in favor of defendant, "pursuant to GCR 117", on April 10, 1981.

Plaintiff appeals as of right.

The primary issue we need decide is whether the trial court erred by granting summary judgment, pursuant to GCR 1963, 117.2(3), in favor of defendant. We answer in the affirmative.

It is well settled that failure to file supporting affidavits necessitates reversal, regardless of whether the pleadings and other proof would support the motion. *DeMare Bros Construction Co, Inc*

*v Teska,* 49 Mich App 642, 646; 212 NW2d 602 (1973); *Nabkey v Kent Community Action Program, Inc,* 99 Mich App 480, 483; 298 NW2d 11 (1980). The latter case was an FOIA action procedurally similar to the case at bar. Further, if a public body seeks a

"summary disposition of its affirmative defense, it [is] incumbent upon it to offer to the trial court affidavits or other materials sufficient to show that failure of its defense was factually impossible. In the absence of such an offer * * * the summary judgment cannot stand." *Booth Newspapers, Inc v Regents of the University of Michigan,* 93 Mich App 100, 110-111; 286 NW2d 55 (1979).

Hence, the trial court erred in granting defendant's motion for summary judgment.

Even if defendant had supplied the necessary affidavits, it is unclear whether it has met its burden justifying nondisclosure. Initially, it should be noted that

"[d]ue to the similarities between the Federal Freedom of Information Act, 5 USC 552, and the Michigan Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.,* the precursor to the Michigan Freedom of Information Act, this Court has looked to the Federal act for guidance in construction of the former act. *Citizens for Better Care v Dep't of Public Health,* 51 Mich App 454, 463; 215 NW2d 576 (1974), *lv den* 392 Mich 758 (1974). For the same reason, we deem the Federal decisions persuasive in the construction of the current act." *Bredemeier v Kentwood Bd of Ed,* 95 Mich App 767, 771; 291 NW2d 199 (1980).

Also, see *Penokie v Michigan Technological University,* 93 Mich App 650, 658; 287 NW2d 304 (1979), and *Evening News Ass'n v City of Troy,* 101 Mich App 650, 665; 300 NW2d 667 (1980).

Certainly, some of the items requested by plaintiff do not involve a potential invasion of anyone's privacy, *i.e.,* plaintiff's prison transfer records, security reports pertaining to his stay in Washtenaw County, records of his personal property, records regarding his vehicle impoundment and laboratory analyses of the physical evidence connected to the assault. However, although clearly requested, defendant did not respond to the request for that information, has offered no reason to justify nondisclosure, and the trial court ignored those requests when ruling on defendant's motion. Clearly, once a request under the FOIA has been made, a public body has a duty to provide access to the records sought or to release copies of those records unless the records are exempted from disclosure. MCL 15.233(2); MSA 4.1801(3)(2). Thereafter, the public body must do one of the following:

"(a) Grant the request.

"(b) Issue a written notice to the requesting person denying the request.

"(c) Grant the request in part and issue a written notice to the requesting person denying the request in part.

"(d) Under unusual circumstances, issue a notice extending for not more than 10 business days the period during which the public body shall respond to the request. A public body shall not issue more than 1 notice of extension for a particular request." MCL 15.235(2); MSA 4.1801(5)(2).

Since defendant failed to respond, that failure is treated as a final decision to deny the request. Moreover, since the request is deemed to have been denied for failure to respond, plaintiff need only make a showing in circuit court that the request was made and denied. Thereafter, the burden is on defendant to show a viable defense,

MCL 15.240(1); MSA 4.1801(10)(1), *e.g.,* insufficient description of the record, MCL 15.233(1); MSA 4.1801(3)(1), the fact that no record exists, MCL 15.233(3); MSA 4.1801(3)(3), or exemption from disclosure, MCL 15.243; MSA 4.1801(13).

The disputed investigative reports present a different problem. Defendant justifies exemption on the following ground:

"(1) A public body may exempt from disclosure as a public record under this act:

* * *

"(b) Investigating records compiled for law enforcement purposes, but only to the extent that disclosure as a public record would do any of the following:

* * *

"(iii) Constitute an unwarranted invasion of personal privacy." MCL 15.243(1)(b)(iii); MSA 4.1801(13)(1)(b)(iii).

Defendant's denial letter arguably complied with the requirements of MCL 15.235(4); MSA 4.1801(5)(4). However, it is impossible to determine whether defendant met its burden, justifying exemption:

"Whether FOIA exemption claims are resolved in summary judgment proceedings or ordinary trials, the unusual nature of the FOIA action requires a certain amount of creativity in solving proof and procedure difficulties." *Booth Newspapers, supra,* p 111.

This Court then listed three devices developed in federal FOIA litigation to aid in solving procedural difficulties and problems of proof: (1) *in camera* inspection, (2) submission by the public body of "affidavits describing the disputed materials in sufficient detail to allow effective argument by the seeker and a fully informed decision by the court",

and (3) in addition to either of the two foregoing methods, testimony. *Booth, supra,* pp 111-112. Since the trial court employed the first method, MCL 15.240(1); MSA 4.1801(10)(1), and since it made only conclusory findings, this Court cannot determine whether the trial court's decision was proper. Thus, a remand is necessary so that the trial court can articulate the reasons for its decision.

The trial court should be aware that exemptions are to be construed narrowly and "must be supported by substantial justification and explanation, not merely by conclusory assertions". *Penokie, supra,* pp 658-659. The initial inquiry is whether disclosure of the investigative reports would constitute an invasion of privacy and, if so, how serious. *Penokie,* p 659; *Getman v National Labor Relations Board,* 146 US App DC 209; 450 F2d 670 (1971). Nondisclosure is limited to "intimate details of a highly personal nature". *Penokie, supra,* p 660. Trial courts must also be guided by "Michigan's long standing policy of citizen accessibility to public records". *Penokie,* p 662. Further, although one seeking information which may result in an invasion of privacy is required to show that the public interest in releasing the information outweighs the potential harm to the people involved, *Kestenbaum v Michigan State University,* 97 Mich App 5, 20; 294 NW2d 228 (1980), *lv gtd* 411 Mich 869 (1981), that burden should not hamper one in plaintiff's position. Clearly, as defendant suggests in its brief on appeal, the investigative reports contain information regarding the complainant's physical condition after the assault and her description of what occurred. Surely, that information would have had to have been presented at plaintiff's preliminary examination and, but for his guilty plea, at a subsequent criminal trial. Thus, the basis for suppressing such information is

unclear and, perhaps, nonexistent, especially since plaintiff has exhausted his criminal appeals. Indeed, plaintiff has a legitimate interest in determining whether the complainant's statement to the police corresponds with her preliminary examination testimony. On the other hand, such information as complainant's past sexual history would be inadmissible as evidence, would be "intimate details of a highly personal nature", and would be exempt from disclosure as an "unwarranted invasion of personal privacy". The same can be said for her address and telephone number and the names of her parents and their address and telephone number.

Hence, the trial court must articulate its reasons for sustaining defendant's denial of plaintiff's request. Since the trial court erred in granting defendant's motion for summary judgment, reversal is mandated because defendant did not file the necessary supporting affidavits. Further, the trial court did not articulate its reasons for sustaining defendant's denial of plaintiff's request and review by this Court is impossible. Thus, a remand is necessary to make the appropriate findings.

In conclusion we wish to point out that we do not intend to infer that Pennington is entitled to the items he demanded. In this regard we note that plaintiff's demands were for a list of records and copies of records. Hence we respectfully invite the trial court's attention to § 4.1801(3) of the act. Moreover, we fail to find on the record before us whether he paid the costs required under § 4.1801(4) or filed an affidavit of indigency in order to be entitled to receive copies of any information to which he may have been entitled.

Reversed and remanded for proceedings consistent with this opinion. We retain no further jurisdiction.